Arnoux, J.
Plaintiffs, so- far as the case before me shows, transact business of a three-fold character, (the first of which is the most important), being (1) the transmission of express matter in transit through the State of New York, and in part through the city of New York; (2) the receipt of freight; and (3) the delivery of freight in this city. The defendants have t.hreatened,to arrest this business on Sunday, and the plaintiffs have prayed for an injunction against such interference.
So far as the power of the court is concerned, to grant an injunction where the defendants threaten to interfere with the business of plaintiffs, the question *443 lias been examined and determined in favor of the power of the court in a proper case, in The Manhattan Iron Works v. The Board of Police, and which can be fortified by the authorities cited by the learned counsel for plaintiffs. Campbell, Ld. Ch. J., in Emperor of Austria v. Day, 3 De Gex, F. &. J. 217, 240, said:
“ This court has jurisdiction by injunction to protect property for an act threatened, which, if completed, would occasion a right of action.”
Even if an erroneous conclusion had been arrived at in that case, the court unquestionably has jurisdiction in this case, for the reason that the defendants suggested to plaintiff that this course should be pursued, as appears by the papers presented to the court (See authorities on plaintiff’s brief).
This case involves the consideration of two questions : First, the inter-state express traffic; and, second, the domestic business of the plaintiff.
In respect to the first, the complaint shows that the plaintiffs have no means of storage of the goods in transit, either at Jersey City or at the Grand Central Depot. The result would be to permit the railroad to discharge the goods into the street and compel the plaintiff there to place guards over it, with the consequent risk of theft, and damage by the elements.
It cannot be presumed that the Legislature passed I this law to deprive citizens of rights vested in them by 1 existing laws, unless for the benefit of the whole com-, 1 munity, and on making full satisfaction (Calder v. Bull, 3 Dall. 386). Such a presumption would be, to ¡' use the language of the supreme court of the United States, in Gunn v. Barry, 15 Wall. 610, “ contrary to | reason and justice, and to the fundamental principles 4 of the social compact.”
If the Penal Code is susceptible of any such construction, however, as would interfere with the interstate traffic of the plaintiff, such provisions are uncon *444 stitutional and void, because they violate the provisions of the Constitution of the United States,which delegates to Congress the exclusive power to regulate commerce among the several States (U. S. Const., art. I., § 8, subd. 3). This is decided by the supreme court of the United States in Railroad Co. v. Husen (95 U. S. [5 Otto] 465, 469), sb that whatever doubt may have heretofore existed respecting the right of a State under its police power to arrest inter-state commerce heretofore existing, such doubt has been forever removed.
That case presented the following facts
The State of Missouri passed a statute prohibiting the introduction into that State of certain cattle during eight months of each year, and if transported by any railroad, making it liable for damages arising from disease. Husen brought the action against the Hannibal and Saint Jo R. R. for violation of that law, and recovered judgment, which, on appeal, was affirmed. The railroad company then took the case by writ of error to the supreme court of the United States. The supreme court unanimously reversed this judgment, on the ground that this absolute prohibition was an unlawful restraint of commerce by the State. It cannot be doubled that if eight months is thus obnoxious, fifty-two days would be equally so. If fifty-two days consecutively would be obnoxious, then fifty-two days hebdomadally arranged would be equally so. For the court say: “Transportation is essential to commerce, or rather, it is commerce itself; and every obstacle to it or burden laid upon it by legislative authority is regulative (Cases of State Freight Tax, 15 Wall. 232; Ward v. Maryland, 12 Id. 418; Walton v. Missouri, 91 U. S. 275 ; Henderson v. Mayor, &c. of N. Y., 92 U. S. 259; Chy Lung v. Freeman, Id. 275).” The court then proceed to examine the right of .the State to regulate commerce under its police powers, and adds, “But whatever maybe the nature and reach of the *445 police power of a State, it cannot be exercised over a subject confided exclusively to commerce by the Federal Constitution. It cannot invade the domain of the national government.”
And in County of Mobile v. Kimball, 102 U. S. 691, the same court held that commerce among the States consists in intercourse and traffic, including in these terms the transportation of property as well as the purchase, sale and exchange of commodities.
These authorities must be accepted as decisive upon this question, and therefore, this court must hold that so far as the Sunday laws attempt to restrict the transportation of merchandise by the plaintiff consigned beyond the State on one side to be delivered beyond the State on the other side, they are unconstitutional and void under the constitution of the United States.
A different rule prevails, however, where the State is the initial and terminal point. There the regulation above quoted has no application. The State may restrict or prohibit the business to be therein transacted, provided it does not violate well-known rules of legislation and equity. The court in the case last above cited, 102 U. S. 699, adds to this opinion, this: “The States have as full control over their purely internal commerce as Congress has over commerce among the oeveral States and with foreign nations.”
So where a thing may lawfully be done but a certain method is ordained to be malum prohibitum, the law must be enforced and cannot be restrained by injunction. This distinction is clearly pointed out in Davis v. American Society for the Prevention of Cruelty to Animals (75 N. Y. 362). The law made cruelty an offense. Plaintiffs were extensively engaged in the business of slaughtering hogs. The president of the defendant announced that they must discontinue slaughtering hogs by the methods then used, and that he would arrest all persons engaged in it and stop tlxeir *446 business as often as he found plaintiffs conducting it in that way. Observe that it was not the fact of killing the animals that, in the eye of the law, constitutéd the offense, but it was the method that plaintiffs adopted. So in the case at bar, it is not every act that plaintiffs may do on Sunday that is unlawful, nor every act exempt.
It must depend upon the nature and necessity'- of the act. There may be perishable articles in their possession whose delivery is essential and necessary to its owners. The plaintiff certainly would not be justified (and its distinguished counsel has, in the beginning of Ms argument, forestalled any such supposition), and consequent result in transacting its ordinary business, or receiving and delivering non-perishable merchandise on Sunday under ordinary circumstances.
No general rule can be laid down to govern such a case. They must be dealt with as they arise.
Therefore, as to domestic matters, that is, goods to be received and delivered in this city, the injunction is denied ; as to goods in transit the injunction against defendants is continued.