## HENDERSON ET AL. *v.* MAYOR OF THE CITY OF NEW YORK ET AL.

## COMMISSIONERS OF IMMIGRATION *v.* NORTH GERMAN LLOYD.

1. The case of the *City of New York* v. *Miln*, 11 Pet. 103, decided no more than that the requirement from the master of a vessel of a catalogue of his passengers landed in the city, rendered to the mayor on oath, with a correct description of their names, ages, occupations, places of birth, and of last legal settlement, was a police regulation within the power of the State to enact, and not inconsistent with the Constitution of the United States.
2. The result of the *Passenger Cases*, 7 How. 283, was to hold that a tax demanded of the master or owner of the vessel for every such passenger was a regulation of commerce by the State, in conflict with the Constitution and laws of the United States, and therefore void.
3. These cases criticised, and the weight due to them as authority considered.
4. In whatever language a statute may be framed, its purpose and its constitutional validity must be determined by its natural and reasonable effect.
5. Hence a statute which imposes a burdensome and almost impossible condition on the ship-master as a prerequisite to his landing his passengers, with

an alternative payment of a small sum of money for each one of them, is a tax on the ship-owner for the right to land such passengers, and, in effect, on the passenger himself, since the ship-master makes him pay it in advance as part of his fare.

6. Such a statute of a State is a regulation of commerce, and, when applied to passengers from foreign countries, is a regulation of commerce with foreign nations.

7. It is no answer to the charge, that such regulation of commerce by a State is forbidden by the Constitution, to say that it falls within the police power of the States; for, to whatever class of legislative powers it may belong, it is prohibited to the States if granted exclusively to Congress by that instrument.

8. Though it be conceded that there is a class of legislation which may affect commerce, both with foreign nations and between the States, in regard to which the laws of the States may be valid in the absence of action under the authority of Congress on the same subjects, this can have no reference to matters which are in their nature national, or which admit of a uniform system or plan of regulation.

9. The statutes of New York and Louisiana, here under consideration, are intended to regulate commercial matters which are not only of national, but of international concern, and which are also best regulated by one uniform rule, applicable alike to all the seaports of the United States. These statutes are therefore void, because legislation on the subjects which they cover is confided exclusively to Congress by the clause of the Constitution which gives to that body the "right to regulate commerce with foreign nations."

10. The constitutional objection to this tax on the passenger is not removed because the penalty for failure to pay does not accrue until twenty-four hours after he is landed. The penalty is incurred by the act of landing him without payment, and is, in fact, for the act of bringing him into the State.

11. This court does not, in this case, undertake to decide whether or not a State may, in the absence of all legislation by Congress on the same subject, pass a statute strictly limited to defending itself against paupers, convicted criminals, and others of that class, but is of opinion that to Congress rightfully and appropriately belongs the power of legislating on the whole subject.

THESE cases come here by appeal, — the former from the Circuit Court of the United States for the Southern District of New York, the latter from the Circuit Court of the United States for the District of Louisiana.

In the case from New York, which is a suit in equity against the mayor of the city of New York and the Commissioners of Emigration, the bill alleges that the complainants are subjects of Great Britain, and owners of the steamship "Ethiopia;" that their vessel arrived at the port of New York from Glasgow, Scotland, on the 24th of June, 1875, having on board a

number of emigrant passengers, and, among others, three persons whose names are specified, who came from a foreign country, intending to pass through the State of New York, and settle and reside in other States of the Union and in Canada; that, by the statutes of the State of New York, the master of every vessel arriving at the port of New York from a foreign port is required, within twenty-four hours after his arrival, to report in writing to the mayor of New York the name, birthplace, last residence, and occupation of every passenger who is not a citizen of the United States; that the statute then directs the mayor, by indorsement on this report, to require the owner or consignee of the vessel to give a bond for every passenger so reported, in a penalty of $300, with two sureties, each to be a resident and freeholder of the State, conditioned to indemnify the Commissioners of Emigration, and every county, city, and town in the State, against any expense for the relief or support of the person named in the bond for four years thereafter; but that the owner or consignee may commute such bond, and be relieved from giving it, by paying for each passenger, within twenty-four hours after his or her landing, the sum of one dollar and fifty cents, fifty cents whereof is to be paid to other counties in the State, and the residue to the Commissioners of Emigration for their general purposes, and particularly to be used in erecting wharves and buildings, and in paying salaries and clerk hire.

That if he does not, within twenty-four hours after landing such passengers, either give the bond or pay the commutation-tax for each passenger, he is liable to a penalty of $500 for every such passenger, which is made a lien on, and may be enforced against, the vessel, at the suit of the Commissioners of Emigration.

The master of the "Ethiopia" made the report required by the act: whereupon the complainants, in order to test the validity of the provisions of the acts requiring the bond or the commutation thereof, filed their bill, which the court, on the demurrer of the defendants, dismissed. The complainants thereupon appealed to this court.

*Mr. James Emott* for the appellants.

1. The acts of the legislature of the State of New York

under which the defendants demand the bond or the commutation-tax for every alien landing from a foreign port on his way to other states or countries, and which the complainants allege deprive them of rights to which they are entitled by the Constitution of the United States, consist of a series of acts passed in 1847, 1848, 1849, 1850, 1853, 1871, and 1873.

2. The extent of the decision in the case of the *City of New York* v. *Miln*, 11 Pet. 102, is simply that the State may lawfully require information of the character of the passengers who enter her ports from abroad, and to that end may, by law, require the master of a vessel to report an account of his passengers.

The Revised Statutes of New York, adopted in 1830, imposing for the first time a tax upon immigrants, were, in *Passenger Cases*, 7 How. 283, pronounced unconstitutional, so far as they attempted to subject vessels or their owners to a tax or imposition of head-money upon, or on account of, passengers from foreign countries.

The act of 1849, which requires the carrier of passengers to give a bond of indemnity in the sum of $300, with sureties and a continuing liability for four years, to the State of New York, for every passenger landed, whether he remains in the State or is to pass directly through it to other states or countries, whether rich or poor, old or young, well or sick, competent or disabled, to support himself, is, to that extent, unconstitutional. Its well-understood purpose was not, however, to obtain such bonds. It is disclosed by the succeeding provisions, which authorize the parties liable to be called on for these bonds to commute by the payment of a specific sum for every passenger.

3. The acts of the legislature under which bonds or a tax is demanded for passengers are in violation of the following provisions of the Constitution : —

Art. 1, sect. 8. " The Congress shall have power . . . to regulate commerce with foreign nations and among the several States."

Sect. 10, subd. 2. " No State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be actually necessary for executing its inspection laws.

No State shall, without the consent of the Congress, lay any duty of tonnage."

The laws in question are regulations of commerce which a State has no power to make; and the provisions exacting head-money for immigrants are an attempt to lay an impost or duty on imports.

4. Commerce includes navigation. It means intercourse. It includes all the subjects of such intercourse, and the transportation of persons as much as of property. *Gibbons* v. *Ogden,* 9 Wheat. 189; *Crandall* v. *Nevada,* 6 Wall. 35; *Railroad Co.* v. *Fuller,* 17 id. 560; *Railroad Co.* v. *Maryland,* 21 id. 456.

5. The power conferred upon Congress to regulate commerce is exclusive. *Gibbons* v. *Ogden, supra; Passenger Cases,* 7 How. 283; *Ex parte McNeil,* 13 Wall. 236; *The State Freight Tax Cases,* 15 id. 232; *Railroad Co.* v. *Fuller, supra.*

6. If the act of the legislature of New York had simply required a tax of one dollar and fifty cents for every passenger, and imposed, in case of failure to pay, a penalty, which should be a lien on the vessel, it would have been explicitly condemned by the decision in *Passenger Cases, supra.*

The alternative of a bond offered apparently to make the payment of a specific sum the election of the passenger or his carrier is a device to collect a tax on immigrants, and was manifestly intended to evade the decision which condemned, as unconstitutional, its direct imposition. That which cannot be done directly will not be permitted to be done indirectly. *Almy* v. *California,* 24 How. 169; *Brown* v. *Maryland,* 12 Wheat. 419.

The statutes in question are not an exercise of the police power, which, it might be claimed, belongs to the States respectively, to protect themselves against paupers or criminals. They violate the acts of Congress and our treaties with foreign powers.

*Mr. Francis Kernan* and *Mr. John E. Develin, contra.*

1. The question arising in this case was not adjudicated in *Passenger Cases,* 7 How. 283.

2. The act to be now passed upon does not impose a tax upon the passenger. It provides, that, "within twenty-four hours *after the landing of any passenger,*" the master of the vessel "from which such passenger shall have been landed" shall

make to the mayor of the city of New York the report speci-
fied. It further provides, that it shall be lawful, within twenty-
four hours after the landing of such passengers, to commute for
the bonds required by paying one dollar and fifty cents for each
passenger.

3. The act under consideration is not a regulation of com-
merce. It is a police regulation to protect the State from
foreign paupers by appropriate legislation, the constitutional
character of which seems to have been settled by this court.
*City of New York* v. *Miln*, 11 Pet. 102; *Passenger Cases*,
7 How., per McLean, J., pp. 400, 406, 409, 410; *Holmes* v.
*Jamison*, 14 Pet. 540; *Grove* v. *Slaughter*, 15 id. 449; *Prigg* v.
*Pennsylvania*, 16 id. 539. It does not, as did the Massachusetts
statute, which was held valid, prevent the landing of immi-
grants until after its provisions are complied with. It affects
only persons who are upon the soil of the State and clearly
subject to its jurisdiction, and imposes no tax upon the immi-
grant or the importer.

4. The act is not an attempt to evade the decision of the
court in the *Passenger Cases:* on the contrary, it is in con-
formity with the law there declared. The majority and minor-
ity of the court declared that the States could rightfully protect
themselves from pauper immigration from foreign countries.

The State of New York, in accordance with that decision,
and in the only practical mode in which she can exercise her
conceded right of self-protection against foreign paupers, exacts,
by the statute under consideration, a bond to indemnify the State
if the immigrant shall be a public charge within five years.

But it is objected that the law requires a bond for *all* the
passengers who have been landed. We answer, that, if the
State has rightful authority to exact such a bond for every
passenger who in *the opinion* of its agent is incompetent to
maintain himself, the law is not void because it exacts the bond
as to all.

The right of the State to exact this indemnity cannot depend
upon the manner in which it is exercised after the immigrant
has been landed. There is no practical mode in which the State
can correctly decide which of these alien strangers is self-sup-
porting. Hence it may rightfully exact indemnity from all.

The right of the owner or consignee to commute by paying a small sum instead of giving a bond of indemnity for each does not render the law invalid. This is at the option of the owner or consignee. It cannot be tortured into an indirect mode of imposing a tax or duty upon the passenger as such. The option is allowed as a favor to the owner or consignee of the vessel. The commutation is by no means as perfect a protection to the State as a bond on behalf of each indigent person landed.

It cannot seriously be contended that this statute is void because it is in conflict with any statute of the United States, or treaty made by it.

In *Commissioners of Immigration* v. *North German Lloyd*, which was an action to prevent the appellants who were the respondents from requiring bonds or commutation thereof from all passengers, the court below granted the injunction.

*Messrs. Samuel R. & C. L. Walker* for the appellants.
*Mr. W. S. Benedict*, contra.

MR. JUSTICE MILLER delivered the opinion of the court.

In the case of the *City of New York* v. *Miln*, reported in 11 Pet. 103, the question of the constitutionality of a statute of the State concerning passengers in vessels coming to the port of New York was considered by this court. It was an act passed Feb. 11, 1824, consisting of several sections. The first section, the only one passed upon by the court, required the master of every ship or vessel arriving in the port of New York from any country out of the United States, or from any other State of the United States, to make report in writing, and on oath, within twenty-four hours after his arrival, to the mayor of the city, of the name, place of birth, last legal settlement, age, and occupation of every person brought as a passenger from any country out of the United States, or from any of the United States into the port of New York, or into any of the United States, and of all persons landed from the ship, or put on board, or suffered to go on board, any other vessel during the voyage, with intent of proceeding to the city of New York. A penalty was prescribed of seventy-five dollars for each passenger not so reported, and for every person whose name, place of

birth, last legal settlement, age, and occupation should be falsely reported.

The other sections required him to give bond, on the demand of the mayor, to save harmless the city from all expense of support and maintenance of such passenger, or to return any passenger, deemed liable to become a charge, to his last place of settlement; and required each passenger, not a citizen of the United States, to make report of himself to the mayor, stating his age, occupation, the name of the vessel in which he arrived, the place where he landed, and name of the commander of the vessel. We gather from the report of the case that the defendant, Miln, was sued for the penalties claimed for refusing to make the report required in the first section. A division of opinion was certified by the judges of the Circuit Court on the question, whether the act assumes to regulate commerce between the port of New York and foreign ports, and is unconstitutional and void.

This court, expressly limiting its decision to the first section of the act, held that it fell within the police powers of the States, and was not in conflict with the Federal Constitution.

From this decision Mr. Justice Story dissented, and in his opinion stated that Chief Justice Marshall, who had died between the first and the second argument of the case, fully concurred with him in the view that the statute of New York was void, because it was a regulation of commerce forbidden to the States.

In the *Passenger Cases*, reported in 7 How. 283, the branch of the statute not passed upon in the preceding case came under consideration in this court. It was not the same statute, but was a law relating to the marine hospital on Staten Island. It authorized the health commissioner to demand, and, if not paid, to sue for and recover, from the master of every vessel arriving in the port of New York from a foreign port, one dollar and fifty cents for each cabin passenger, and one dollar for each steerage passenger, mate, sailor, or mariner, and from the master of each coasting vessel twenty-five cents for each person on board. These moneys were to be appropriated to the use of the hospital.

The defendant, Smith, who was sued for the sum of $295 for

refusing to pay for 295 steerage passengers on board the British ship " Henry Bliss," of which he was master, demurred to the declaration on the ground that the act was contrary to the Constitution of the United States, and void. From a judgment against him, affirmed in the Court of Errors of the State of New York, he sued out a writ of error, on which the question was brought to this court.

It was here held, at the January Term, 1849, that the statute was " repugnant to the constitution and laws of the United States, and therefore void." 7 How. 572.

Immediately after this decision, the State of New York modified her statute on that subject, with a view, no doubt, to avoid the constitutional objection; and amendments and alterations have continued to be made up to the present time.

As the law now stands, the master or owner of every vessel landing passengers from a foreign port is bound to make a report similar to the one recited in the statute held to be valid in the case of *New York* v. *Miln;* and on this report the mayor is to indorse a demand upon the master or owner that he give a bond for every passenger landed in the city, in the penal sum of $300, conditioned to indemnify the commissioners of emigration, and every county, city, and town in the State, against any expense for the relief or support of the person named in the bond for four years thereafter; but the owner or consignee may commute for such bond, and be released from giving it, by paying, within twenty-four hours after the landing of the passengers, the sum of one dollar and fifty cents for each one of them. If neither the bond be given nor the sum paid within the twenty-four hours, a penalty of $500 for each pauper is incurred, which is made a lien on the vessel, collectible by attachment at the suit of the Commissioner of Emigration.

Conceding the authority of the *Passenger Cases*, which will be more fully considered hereafter, it is argued that the change in the statute now relied upon requiring primarily a bond for each passenger landed, as an indemnity against his becoming a future charge to the state or county, leaving it optional with the ship-owner to avoid this by paying a fixed sum for each passenger, takes it out of the principle of the case of *Smith* v. *Turner,* — the *Passenger Case* from New York. It is said that

the statute in that case was a direct tax on the passenger, since the act authorized the shipmaster to collect it of him, and that on that ground alone was it held void; while in the present case the requirement of the bond is but a suitable regulation under the power of the State to protect its cities and towns from the expense of supporting persons who are paupers or diseased, or helpless women and children, coming from foreign countries.

In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect; and if it is apparent that the object of this statute, as judged by that criterion, is to compel the owners of vessels to pay a sum of money for every passenger brought by them from a foreign shore, and landed at the port of New York, it is as much a tax on passengers if collected from them, or a tax on the vessel or owners for the exercise of the right of landing their passengers in that city, as was the statute held void in the *Passenger Cases.*

To require a heavy and almost impossible condition to the exercise of this right, with the alternative of payment of a small sum of money, is, in effect, to demand payment of that sum. To suppose that a vessel, which once a month lands from three hundred to one thousand passengers, or from three thousand to twelve thousand per annum, will give that many bonds of $300 with good sureties, with a covenant for four years, against accident, disease, or poverty of the passenger named in such bond, is absurd, when this can be avoided by the payment of one dollar and fifty cents collected of the passenger before he embarks on the vessel.

Such bonds would amount in many instances, for every voyage, to more than the value of the vessel. The liability on the bond would be, through a long lapse of time, contingent on circumstances which the bondsman could neither foresee nor control. The cost of preparing the bond and approving sureties, with the trouble incident to it in each case, is greater than the sum required to be paid as commutation. It is inevitable, under such a law, that the money would be paid for each passenger, or the statute resisted or evaded. It is a law in its purpose and effect imposing a tax on the owner of the

vessel for the privilege of landing in New York passengers transported from foreign countries.

It is said that the purpose of the act is to protect the State against the consequences of the flood of pauperism immigrating from Europe, and first landing in that city.

But it is a strange mode of doing this to tax every passenger alike who comes from abroad.

The man who brings with him important additions to the wealth of the country, and the man who is perfectly free from disease, and brings to aid the industry of the country a stout heart and a strong arm, are as much the subject of the tax as the diseased pauper who may become the object of the charity of the city the day after he lands from the vessel.

No just rule can make the citizen of France landing from an English vessel on our shore liable for the support of an English or Irish pauper who lands at the same time from the same vessel.

So far as the authority of the cases of *New York* v. *Miln* and *Passenger Cases* can be received as conclusive, they decide that the requirement of a catalogue of passengers, with statements of their last residence, and other matters of that character, is a proper exercise of State authority and that the requirement of the bond, or the alternative payment of money for each passenger, is void, because forbidden by the constitution and laws of the United States.   But the *Passenger Cases* (so called because a similar statute of the State of Massachusetts was the subject of consideration at the same term with that of New York) were decided by a bare majority of the court.   Justices McLean, Wayne, Catron, McKinley, and Grier held both statutes void; while Chief Justice Taney, and Justices Daniel, Nelson, and Woodbury, held them valid.   Each member of the court delivered a separate opinion, giving the reasons for his judgment, except Judge Nelson, none of them professing to be the authoritative opinion of the court.   Nor is there to be found, in the reasons given by the judges who constituted the majority, such harmony of views as would give that weight to the decision which it lacks by reason of the divided judgments of the members of the court.   Under these circumstances, with three cases before us arising under statutes of three different States

on the same subject, which have been discussed as though open in this court to all considerations bearing upon the question, we approach it with the hope of attaining a unanimity not found in the opinions of our predecessors.

As already indicated, the provisions of the Constitution of the United States, on which the principal reliance is placed to make void the statute of New York, is that which gives to Congress the power "to regulate commerce with foreign nations." As was said in *United States* v. *Holliday*, 3 Wall. 417, "commerce with foreign nations means commerce between citizens of the United States and citizens or subjects of foreign governments." It means trade, and it means intercourse. It means commercial intercourse between nations, and parts of nations, in all its branches. It includes navigation, as the principal means by which foreign intercourse is effected. To regulate this trade and intercourse is to prescribe the rules by which it shall be conducted. "The mind," says the great Chief Justice, "can scarcely conceive a system for regulating commerce between nations which shall exclude all laws concerning navigation, which shall be silent on the admission of the vessels of one nation into the ports of another;" and he might have added, with equal force, which prescribed no terms for the admission of their cargo or their passengers. *Gibbons* v. *Ogden*, 9 Wheat. 190.

Since the delivery of the opinion in that case, which has become the accepted canon of construction of this clause of the Constitution, as far as it extends, the transportation of passengers from European ports to those of the United States has attained a magnitude and importance far beyond its proportion at that time to other branches of commerce. It has become a part of our commerce with foreign nations, of vast interest to this country, as well as to the immigrants who come among us to find a welcome and a home within our borders. In addition to the wealth which some of them bring, they bring still more largely the labor which we need to till our soil, build our railroads, and develop the latent resources of the country in its minerals, its manufactures, and its agriculture. Is the regulation of this great system a regulation of commerce? Can it be doubted that a law which prescribes the terms on which vessels

shall engage in it is a law regulating this branch of commerce ?

The transportation of a passenger from Liverpool to the city of New York is one voyage. It is not completed until the passenger is disembarked at the pier in the latter city. A law or a rule emanating from any lawful authority, which prescribes terms or conditions on which alone the vessel can discharge its passengers, is a regulation of commerce ; and, in case of vessels and passengers coming from foreign ports, is a regulation of commerce with foreign nations.

The accuracy of these definitions is scarcely denied by the advocates of the State statutes. But assuming, that, in the formation of our government, certain powers necessary to the administration of their internal affairs are reserved to the States, and that among these powers are those for the preservation of good order, of the health and comfort of the citizens, and their protection against pauperism and against contagious and infectious diseases, and other matters of legislation of like character, they insist that the power here exercised falls within this class, and belongs rightfully to the States.

This power, frequently referred to in the decisions of this court, has been, in general terms, somewhat loosely called the police power. It is not necessary for the course of this discussion to attempt to define it more accurately than it has been defined already. It is not necessary, because whatever may be the nature and extent of that power, where not otherwise restricted, no definition of it, and no urgency for its use, can authorize a State to exercise it in regard to a subject-matter which has been confided exclusively to the discretion of Congress by the Constitution.

Nothing is gained in the argument by calling it the police power. Very many statutes, when the authority on which their enactments rest is examined, may be referred to different sources of power, and supported equally well under any of them. A statute may at the same time be an exercise of the taxing power and of the power of eminent domain. A statute punishing counterfeiting may be for the protection of the private citizen against fraud, and a measure for the protection of the currency and for the safety of the government which issues it.

It must occur very often that the shading which marks the line between one class of legislation and another is very nice, and not easily distinguishable.

But, however difficult this may be, it is clear, from the nature of our complex form of government, that, whenever the statute of a State invades the domain of legislation which belongs exclusively to the Congress of the United States, it is void, no matter under what class of powers it may fall, or how closely allied to powers conceded to belong to the States.

"It has been contended," says Marshall C. J., "that if a law passed by a State, in the exercise of its acknowledged sovereignty, comes into conflict with a law passed by Congress in pursuance of the Constitution, they affect the subject and each other like equal opposing powers. But the framers of our Constitution foresaw this state of things, and provided for it by declaring the supremacy, not only of itself, but of the laws made in pursuance thereof. The nullity of any act inconsistent with the Constitution is produced by the declaration that the Constitution is supreme." Where the Federal government has acted, he says, "In every such case the act of Congress or the treaty is supreme; and the laws of the State, though enacted in the exercise of powers not controverted, must yield to it." 9 Wheat. 210.

It is said, however, that, under the decisions of this court, there is a kind of neutral ground, especially in that covered by the regulation of commerce, which may be occupied by the State, and its legislation be valid so long as it interferes with no act of Congress, or treaty of the United States. Such a proposition is supported by the opinions of several of the judges in the *Passenger Cases;* by the decisions of this court in *Cooly* v. *The Board of Wardens*, 12 How. 299; and by the cases of *Crandall* v. *Nevada*, 6 Wall. 35, and *Gilman* v. *Philadelphia*, 3 Wall. 713. But this doctrine has always been controverted in this court, and has seldom, if ever, been stated without dissent. These decisions, however, all agree, that under the commerce clause of the Constitution, or within its compass, there are powers, which, from their nature, are exclusive in Congress; and, in the case of *Cooly* v. *The Board of Wardens*, it was said, that "whatever subjects of this power are in their nature

national, or admit of one uniform system or plan of regulation, may justly be said to be of such a nature as to require exclusive legislation by Congress." A regulation which imposes onerous, perhaps impossible, conditions on those engaged in active commerce with foreign nations, must of necessity be national in its character. It is more than this; for it may properly be called *international.* It belongs to that class of laws which concern the exterior relation of this whole nation with other nations and governments. If our government should make the restrictions of these burdens on commerce the subject of a treaty, there could be no doubt that such a treaty would fall within the power conferred on the President and the Senate by the Constitution. It is in fact, in an eminent degree, a subject which concerns our international relations, in regard to which foreign nations ought to be considered and their rights respected, whether the rule be established by treaty or by legislation.

It is equally clear that the matter of these statutes may be, and ought to be, the subject of a uniform system or plan. The laws which govern the right to land passengers in the United States from other countries ought to be the same in New York, Boston, New Orleans, and San Francisco. A striking evidence of the truth of this proposition is to be found in the similarity, we might almost say in the identity, of the statutes of New York, of Louisiana, and California, now before us for consideration in these three cases.

It is apparent, therefore, that, if there be a class of laws which may be valid when passed by the States until the same ground is occupied by a treaty or an act of Congress, this statute is not of that class.

The argument has been pressed with some earnestness, that inasmuch as this statute does not come into operation until twenty-four hours after the passenger has landed, and has mingled with, or has the right to mingle with, the mass of the population, he is withdrawn from the influence of any laws which Congress might pass on the subject, and remitted to the laws of the State as its own citizens are. It might be a sufficient answer to say that this is a mere evasion of the protection which the foreigner has a right to expect from the Federal government when he

lands here a stranger, owing allegiance to another government, and looking to it for such protection as grows out of his relation to that government.

But the branch of the statute which we are considering is directed to and operates directly on the ship-owner. It holds him responsible for what he has done before the twenty-four hours commence. He is to give the bond or pay the money because he *has* landed the passenger, and he is given twenty-four hours' time to do this before the penalty attaches. When he is sued for this penalty, it is not because the man has been here twenty-four hours, but because he brought him here, and failed to give the bond or pay one dollar and fifty cents.

The effective operation of this law commences at the other end of the voyage. The master requires of the passenger, before he is admitted on board, as a part of the passage-money, the sum which he knows he must pay for the privilege of landing him in New York. It is, as we have already said, in effect, a tax on the passenger, which he pays for the right to make the voyage, — a voyage only completed when he lands on the American shore. The case does not even require us to consider at what period after his arrival the passenger himself passes from the sole protection of the constitution, laws, and treaties of the United States, and becomes subject to such laws as the State may rightfully pass, as was the case in regard to importations of merchandise in *Brown* v. *Maryland*, 12 Wheat. 417, and in the *License Cases*, 5 How. 504.

It is too clear for argument that this demand of the owner of the vessel for a bond or money on account of every passenger landed by him from a foreign shore is, if valid, an obligation which he incurs by bringing the passenger here, and which is perfect the moment he leaves the vessel.

We are of opinion that this whole subject has been confided to Congress by the Constitution; that Congress can more appropriately and with more acceptance exercise it than any other body known to our law, state or national; that by providing a system of laws in these matters, applicable to all ports and to all vessels, a serious question, which has long been matter of contest and complaint, may be effectually and satisfactorily settled.

Whether, in the absence of such action, the States can, or how far they can, by appropriate legislation, protect themselves against *actual* paupers, vagrants, criminals, and diseased persons, arriving in their territory from foreign countries, we do not decide. The portions of the New York statute which concern persons who, on inspection, are found to belong to these classes, are not properly before us, because the relief sought is to the part of the statute applicable to all passengers alike, and is the only relief which can be given on this bill.

The decree of the Circuit Court of New York, in the case of *Henderson et al.* v. *Mayor of the City of New York et al.*, is reversed, and the case remanded, with direction to enter a decree for an injunction in accordance with this opinion.

The statute of Louisiana, which is involved in the case of *Commissioners of Immigration* v. *North German Lloyd*, is so very similar to, if not an exact copy of, that of New York, as to need no separate consideration. In this case the relief sought was against exacting the bonds or paying the commutation-money as to all passengers, which relief the Circuit Court granted by an appropriate injunction; and the decree in that case is accordingly affirmed.