# CORPORATION COURT OF THE CITY OF LYNCHBURG

Commonwealth of Virginia

v.

Chesapeake and Ohio RR. Co.

September 1890

By Judge J. Singleton Diggs

These prosecutions against the Railroad Company for running trains on Sunday are submitted to the Court on an agreed statement of facts. The facts being that the Company did run its trains on Sunday, as charged, but that they were engaged in carrying merchandise from other states into and through the territory of Virginia.

The question involved is, whether the Act of the Assembly [Va. Code § 3801 (1887)] forbidding the running of freight trains on Sunday is within the power of the state legislature so far as it applies to trains carrying freight from one state into or through the State of Virginia.

The Constitution of the United States, Article I, Section VIII, confers upon Congress the power "to regulate commerce with foreign nations, and among the several states and among the Indian tribes."

That the carrying of freight, miscellaneous merchandise, and all the subjects of trade and barter, by rail, from one state into another, and carrying them in the way of trade, that is to say, from the ownership in one state to a different ownership in another state, is "commerce among the several states," would hardly admit of question. But this, as in fact every other point involved, has been determined by the Supreme Court of the United States, and to cite the decisions of the tribunal having supreme authority in construing and expounding the Constitution, is sufficient. In the *State Freight Tax Cases*, 82 U.S. (15 Wall.) 232 (1872), that Court held that "the transportation of freight, or of the subject of commerce, is a constituent part of commerce itself, and that a tax upon freight transported from state to state is a regulation of commerce among the states." If a small tax upon freight in transit is a

regulation of commerce, *a fortiori* it is a regulation to stop it and prevent its transit altogether for a limited time.

Mr. Justice Strong, in delivering the opinion in this case, said that the power sought to be conferred upon Congress by the Constitution was a power to prevent embarrassing restrictions upon the trade between the states, or between citizens of different states, by any state. No more "embarrassing restrictions" upon the commerce could be devised than absolute stoppage of all railroad transportation on the Sabbath; for this state might adopt the first day of the week as its legal Sabbath day, and the adjoining state adopt the last day of the week, and so on, calling a halt as to all such transportation, and destroying interstate commerce. In the case cited, the question involved was the constitutionality of a statute imposing a tax on all freight carried through the state, and the Court further said, that "so far as effects commodities transported through the state, or from points without the state to points within it, or from points within the state to points without it, the act is regulation of commerce," and so the act was held to be not within the power of the state legislature, and void.

It was contended in the earlier cases that although the Constitution conferred this power on Congress, yet in so far as Congress had not legislated on the subject, the states might do so. And, although this point seems to have been answered by the opinion delivered in the *State Freight Tax Cases*, it was again strongly urged in *Welton v. Missouri*, 91 U.S. 275 (1875).

The Court held that the non-exercise by Congress of its power to regulate commerce among the several states, is equivalent to a declaration by that body that such commerce shall be free from any restrictions. See also *Henderson v. Mayor of New York City*, 92 U.S. 259 (1875), where it is expressly decided that Congress has exclusive power to regulate commerce among the states, and *Hall v. DeCuir*, 95 U.S. 485, 488 (1877), where the Court says that "state legislation which seeks to impose a direct burden upon interstate commerce, or to interfere directly with its freedom, does encroach upon the *exclusive* power of Congress."

It might be argued that the power to prevent desecration of the Sabbath was within the *police* power of the state, to secure domestic tranquility and order. If there be any such power reserved to the states its limits have never been defined, or attempted to be defined. I am not aware of any such special power conferred, but am of opinion that all power not expressly or by necessary implication granted away from and by the state remains within them. And we have seen that power over this subject, exclusive of any interference by the states, has been granted by the states to Congress, with no exceptions as to police regulations. Moreover, this point has been passed upon

by the Supreme Court. In *Railroad Co. v. Husen*, 95 U.S. 465, 473 (1877), the Court held as follows.

1. The statute of Missouri which prohibits driving or conveying any Texas, Mexican, or Indian cattle into the state, between March the 1st and December the 1st in each year is in conflict with the clause of the Constitution which ordains that Congress shall have power to regulate commerce among the several states.

2. The police power of the state cannot be exercised over the interstate transportation of subjects of commerce.

The latest outgiving of the Supreme Court upon the subject will be found in the celebrated "original-package" decision, *Leisy v. Hardin*, 135 U.S. 100 (1889). In delivering the opinion of the Court, Chief Justice Fuller says: "Where the subject is national in its character, and admits and requires uniformity of regulation, affecting alike all the states, such as transportation between the states, including the importation of the goods from one state into another, Congress can alone act upon it and provide the needed regulations. The absence of any law of Congress on the subject is equivalent to its declaration that commerce in that matter shall be free." *Id.* at 119.

Considering that all the points involved in these cases have been adjudicated by the highest tribunal of the country, I am of the opinion that the question here is closed to debate, and as to these indictments a *nolle prosequi* will be entered.