MAYOR, ETC., OF THE CITY OF NEW YORK v. COMMISSIONERS OF EMIGRATION.

(*Supreme Court, General Term, First Department.*   February 11, 1891.)

IMMIGRATION—CARE OF IMMIGRANTS—LIABILITY FOR EXPENSES.

Laws N. Y. 1882, c. 145, providing for the raising by the commissioners of emigration of a fund for the expenses of the inspection and care of alien passengers, by contract with carriers of emigrants by vessel to the city of New York, is not enforceable, as the subject is solely within the jurisdiction of the United States congress; and the commissioners are not liable to the city of New York for the care and maintenance by the city of immigrants arriving at that port, where it is not shown that there is any existing fund out of which payment therefor could be made by the commissioners.

Appeal from special term, New York county.

Action by the mayor, aldermen, and commonalty of the city of New York against the commissioners of emigration. Plaintiffs appeal from an interlocutory judgment sustaining defendants' demurrer to the complaint herein. The complaint alleges that it was the duty of the defendants to care for and maintain immigrants arriving at the port of New York suffering from small-pox and other infectious, pestilential, or contagious disease, or to provide for their care and maintenance for and during such times as might be necessary for the protection of the public health. It is further alleged that certain immigrants suffering from small-pox and other infectious, pestilential, or contagious disease did arrive at the port of New York during certain times specified in a bill of particulars annexed to said complaint and made a part thereof, and that by reason of the neglect or refusal of said defendants to care for and maintain said immigrants arriving as aforesaid, or to provide for their care and maintenance, the plaintiffs were compelled, in order to protect the public health, to care for and maintain, and did care for and maintain, in hospitals belonging to and supported by said plaintiffs, said immigrants arriving at the port of New York suffering from small-pox and other infectious, pestilential, or contagious disease, and were compelled to render, and did render, work, labor, and services in connection therewith, a bill of particulars of which items of work, labor, and services, and the dates thereof, is annexed to said complaint, and forms a part thereof. That the fair and reasonable value of the work, labor, and services rendered for six years last past amounts, in the aggregate, to $3,861. That no part of said sum has been paid, although payment has been duly demanded. To the complaint a demurrer was interposed, as hereinbefore stated. The demurrer was sustained by Judge INGRAHAM, an order and interlocutory judgment was entered, from which this appeal is taken.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*William H. Clark,* (*Edward H. Hawke, Jr.,* and *Charles A. O'Neil,* of counsel,) for appellants. *Charles F. Tabor,* (*J. H. Maynard,* of counsel,) for respondents.

BRADY, J. From May, 1847, to March, 1876, the legislature of this state endeavored to provide against the expense of caring for alien passengers arriving at this port from foreign countries; and, although the history of that legislation might be interesting and instructive, it is not necessary to mention it in detail. The system established by it was put in operation and continued for many years, and, indeed, until the supreme court of the United States rendered a decision in the case of *Henderson* v. *Mayor, etc.,* to be found reported in 92 U. S. 259, declaring such legislation unconstitutional and void. As a result of efforts made by the commissioners of emigration, who were impressed with the grave consequences which must ensue from that decision, the legislature, on application, upon the 29th of April, 1876, adopted the following resolution: "Resolved, that the commissioners of emigration are

hereby instructed to call the attention of the congress of the United States to the present condition of the emigration laws, resulting from the decision of the supreme court of the United States declaring the state laws on that subject unconstitutional and void, and to impress upon congress the necessity for speedy national legislation in regard thereto, and the said commissioners to take such steps as in their judgment may be proper to secure such legislation." And that was followed in August, 1882, by the passage of an act of congress to regulate immigration, which imposes upon the owners of steam or sailing vessels who shall bring passengers from a foreign port into a port of the United States a duty of 50 cents for every such passenger not a citizen. 22 U. S. St. at Large, p. 214.    This was declared to be a valid exercise of the power to regulate commerce with foreign nations.    *Head Money Cases,* 112 U. S. 580, 5 Sup. Ct. Rep. 247.    The act just mentioned imposes upon the secretary of the treasury the duty of superintending and of executing its provisions, with power to enter into contracts with state commissioners to take charge of the local affairs of emigrants in the ports within the state, and to provide for the superintendence and relief of such emigrants therein landing as might fall into distress and need public aid.    The purpose of the act, it was said in the *Head Money Cases* by the learned justice delivering the opinion, "was humane, highly beneficial to the poor and helpless immigrant, and essential to the protection of the people in whose midst they were deposited." In addition to this, the legislature of this state passed an act in 1882 (chapter 145, Laws of that year) providing means for raising a fund to be used by the commissioners of emigration in caring for and maintaining alien passengers. The act of congress, it may be observed here, provides for the distribution of the sums received under its provisions among the different states, declaring, however, that no greater sum shall be expended at any port than has been collected thereat.    The act of this state referred to is as follows: "Section 1. In order to save the state from the expense of the inspection and care of alien passengers, the commissioners of emigration are hereby authorized to contract with the carriers of emigrants by vessel to the port of New York, for periods not exceeding five years at a time, to receive not less than fifty cents nor more than one dollar for each alien passenger so brought for such inspection and care, which payments, when made, shall be in lieu of any tax by the state for the inspection and care of such passengers."    It will be observed that the commissioners of emigration were by the act authorized to contract with the carriers of emigrants by vessel to the port of New York, for periods not exceeding five years at a time, to receive not less than 50 cents nor more than $1 for each alien passenger so brought.    But the difficulty with the beneficial use of the powers conferred by this act arises from the fact that it cannot be enforced, in view of the decisions to which reference has been made, and by which the whole subject is declared to be solely within the jurisdiction of the United States in congress assembled.    The only fund, therefore, which is accessible is that which should be received from the secretary of the treasury in the distribution of the sums received under the act of congress passed in 1882, and as to which there is no allegation in the complaint.    Nor is there any allegation that any contract had been made under the provisions of the act of 1882 passed by the legislature of this state; and therefore there is no existing fund out of which the defendants could make payment to the plaintiff for any expenses to which it has been subjected in the care of emigrants, and which should be reimbursed by the defendants if they were in financial condition to do so.    The remedy would seem to be (if such an application has not already been made) to require the board of emigration to apply for its proportion of the fund to be distributed, as already stated by the secretary of the treasury.    All the objections imposed upon the defendants are necessarily based upon the proposition that the various acts of the legislature referred to conferring the power to raise a fund necessary for the pur-

pose would be operative, and in that manner provide for any contingent expenses growing out of the subject. But this, as we have seen, has not been verified, and the defendants have therefore no fund responsive to the plaintiff's claim, and no power to gather it except upon application to the secretary of the treasury, which might or might not be successful. The judgment should therefore be affirmed. All concur.