CITY OF BANGOR *vs.* MELBOURNE P. SMITH and others.

Penobscot.    Opinion April 16, 1891.

*Constitutional Law.    Commerce.    Common Carriers.    Removal of Paupers.*
*U. S. Const.    Art. 1, § 8, cl. 3.    R. S., c. 24, § 50.*

The statute of this State, (R. S., c. 24, § 50,) requiring common carriers who
bring into the State persons not having a settlement therein, to remove them
beyond the State, if they fall into distress within a year, &c., is a regulation
of foreign and interstate commerce, and is in violation of Article 1, § 8,
clause 3, of the Constitution of the United States, and is therefore void.

ON REPORT.

The case is stated in the opinion.

*H. L. Mitchell,* city solicitor, for plaintiff.

Support applied for and received as pauper supplies.    R. S.,
c. 24, § 35 ; *Smithfield* v. *Waterville,* 64 Maine, 412 ; *Linneus*
v. *Sidney,* 70 *Id.* 114 ; *Fayette* v. *Livermore,* 62 *Id.* 229.
Statute framed to prevent the introduction of a class of persons
who become public charges.    Stat. of 1874, c. 259, as amended
by Stat. of 1875, c. 41.    Same men were tendered to defendants
just ten days after they were landed in Bangor, and been sup-
ported four days by the city.

Presumptions that statute is constitutional :    *Donahue* v.
*Richards,* 38 Maine, 379 ; *Moore* v. *Veazie,* 32 *Id.* 343 ; *State*
v. *Lunt,* 6 *Id.* 412.    Statute not a regulation of commerce.
*Bowman* v. *R. R.* 125 U. S. p. 490 ; *License Cases,* 5 How.
504 ; *Cooley* v. *Port Wardens,* 12 How. 299, 318 ; *New York*
v. *Miln,* 11 Peters, 132 ; *Robbins* v. *Shelby County,* 120 U.
S. 489 ; *Smith* v. *Alabama,* 124 U. S. 465 ; *Powell* v. *Penna.*
127 U. S. 678 ; *R. R.* v. *Alabama,* 128 U. S. 96 ; *Kidd* v.
*Pearson, Id.* 1-26 ; *G. R. & B. Co.* v. *Smith, Id.* 174-182 ;
*R. R.* v. *Beckwith,* 129 U. S. 26-36.

*Wilson and Woodard,* for defendants.

Statute unconstitutional because a regulation of commerce,
&c.    Counsel cited :    *County of Mobile* v. *Kimball,* 102 U. S.
691, 702 ; *Gloucester Ferry Co.* v. *Penna.* 114 U. S. 196, 203 ;

*Case of State Freight Tax*, 15 Wall. 232, 279, 281, 286; *Stoutenburgh* v. *Hennick*, 129 U. S. 141, 148; *Bowman* v. *R. R.* 125 U. S. 465, 482; *Hall* v. *De Cuir*, 95 U. S. 485, 489; *Crandall* v. *Nevada*, 6 Wall. 35, 40, 48, 49. Statute not a legitimate exercise of the police power. *R. R.* v. *Husen*, 95 U. S. 465, 469, 470-472; *Bowman* v. *R. R.* 125 U. S. 465, 489, 493; *Henderson* v. *Mayor of New York*, 92 U. S. 259, 269, 275; *Chy Lung* v. *Freeman, Id.* 275, 280, 281.

Libbey, J.   The defendants were the owners of the steamer Caroline Miller, in December, 1887, and January, 1888, which they used as common carriers for passengers and merchandize between the city of New York, in the state of New York, and Bangor, in this state; and by said steamer brought from New York into Bangor on the 9th of December, 1887, fifty-six Italians, who came into this state to work as laborers on the Canadian Pacific Railroad. But for some reason they ceased to work on said road and on the 14th of December, 1887, returned to the city of Bangor, and it is alleged by the plaintiff were destitute and in need of relief, and the overseers of the poor of said city on application therefor took charge of them and furnished them with relief as paupers. And on the 19th day of said December, it is claimed by the plaintiff that the city through its officers tendered to the defendants at their wharf and at their steamer in Bangor, the alleged paupers, and requested that the defendants should receive them and carry them back to New York. This the defendants declined to do, and thereupon the city paid their passage on board said steamer from Bangor to New York.

This action is brought to recover for the necessary supplies furnished said alleged paupers after they were tendered to the defendants, and to recover the money paid for their fare for transportation to New York. The plaintiff claims to recover by virtue of Sec. 50 of Chap. 24, of the Revised Statutes of this state, which reads as follows: "Any common carrier who brings into the state a person not having a settlement therein, shall remove him beyond the state, if he falls into distress within a year; provided, that such person is delivered on board a boat

or at a station of such carrier, by the overseers or municipal officers requesting such removal; and in default thereof, such carrier is liable in assumpsit for the expense of such person's support after such default."

The defendants claim that this statute is unconstitutional and void, and furnishes the plaintiff no ground for the maintenance of this action. And this is the question for our determination.

Congress has power "to regulate commerce with foreign nations and among the several states and with the Indian tribes." Constitution of the United States, Art. 1, § 8, Clause 3. That the carrying of persons from a foreign country into the United States, or from state to state is commerce within the meaning of this clause of the constitution is too well settled to justify the citation of authorities. The bringing of persons by common carriers, then, from another state into this state is commerce between the states. Is the state statute which we have quoted a regulation of commerce? We think it is. In *Railroad Co.* v. *Husen*, 95 U. S. 465, the court says: "Transportation is essential to commerce, or rather it is commerce itself and every obstacle to it or burden laid upon it by legislative authority is a regulation." It is imposing an additional duty upon the carrier. It makes the commerce more burdensome to the carrier; for after a person is landed in this state, it imposes upon the carrier the responsibility for his pecuniary condition for a year.

But it is claimed that this is the exercise of the police power of the state. That the State in the exercise of its police power may, indirectly to some extent, affect commerce between foreign countries and the United States or between States, may be conceded. Just what the police power of the state embraces, and how far it extends does not appear to have been definitely determined. It may exercise it to require quarantine or inspection before landing, of persons brought from abroad. It may exercise it to prevent the landing of passengers infected with contagious disease. It may exercise it over the landing of convicted felons from abroad. It may exercise it over persons who have been subject to contagious disease so as to be liable

to be infected by it and communicate it to others, and thereby endanger the health of the community. But, it cannot exercise it to prevent commerce, nor can it exercise it over the carrying and landing of persons who are not at the time they are brought into the state in a condition to be dangerous to the public. *Railroad Co.* v. *Husen, supra*; *Henderson et al.* v. *Mayor of the City of New York et als.* 92 U. S. 259; *Chy Lung* v. *Freeman, Id.* 275. It cannot exercise it over persons who are free from contagion, who have not been subject to any danger of contagious disease, on the ground that they may become dangerous in that respect within a year or any other fixed period of time, after landing. It has been said that it may exercise it to prevent the bringing into the state of paupers, persons who have no means of support, who are destitute and dependent upon public charity. But it cannot exercise it over a person who is not a pauper when landed, on the ground that he may become a pauper within some fixed period of time. While we do not undertake to determine just where the police power of the state in regard to these matters terminates, it is safe to say that it does not embrace the subjects that we have last pointed out.

This statute is broad and general in its terms. It embraces all persons brought into the state, having no settlement in the state; and as it is found in the pauper statute, the term settlement must be held to mean a pauper settlement, without regard to the fact whether the person is poor at the time when he is brought into the state, or wealthy. He may be worth thousands and hundreds of thousands of dollars, when he is landed in the state, and from the various vicissitudes that men are subject to, within a year from that time may not have a dollar, may be destitute and in need of support as a pauper. He may when brought into the state be a citizen of the state, having no settlement in it; and still under the terms of the statute if he becomes a pauper within a year, it is the duty of the carrier who brings him here to take him and carry him out of the state. By what authority may it be done? A citizen of the state has the legal right to come into it, either with the aid of a common carrier or without such aid. Every citizen of the United States has the

right to enter every other state for temporary purposes or to become a citizen of such state. Suppose the carrier who brings him in undertakes to sieze him and carry him out of the state because he has lost his property within a year and become needy. Would not the courts interfere at once on application therefor, and discharge him from such unlawful restraint? We think it is clearly so. Then again, what right would the carrier have, if he is a pauper and the police power of the state extends to the extent to prevent the landing of paupers within it, to carry him out of this state and land him in another state?

But it is unnecessary to discuss the effect of this statute further. Its provisions are too broad and sweeping to be considered within the power of the state. It is the exercise of a power ·granted solely to the United States, which the state cannot exercise. It is so general that, as we have said, it applies to all persons brought into the state by a carrier, without regard to wealth or poverty when brought in ; but undertakes to impose upon the carrier the burden of removing or supporting him, if he shall within the time named, become destitute.

It is said by counsel that it is aimed against pauperism and may be sustained as valid as to persons who are paupers when brought into the state. Its terms are general. It cannot be divided and held to be valid as to one class of persons and invalid as to others.

*Judgment for defendants.*

PETERS, C. J., VIRGIN, EMERY, FOSTER and WHITEHOUSE, JJ., concurred.