Justice Alito,
concurring in the judgment.
This case presents a narrow question, namely, whether the statutory provision at issue infringes the power of the President to regulate the contents of a passport. This case does not require the Judiciary to decide whether the power to recognize foreign governments and the extent of their territory is conferred exclusively on the President or is shared with Congress. Petitioner does not claim that the statutory provision in question represents an attempt by Congress to dictate United States policy regarding the status of Jerusalem. Instead, petitioner contends in effect that Congress has the power to mandate that an American citizen born abroad be given the option of including in his passport' and Consular Report of Birth Abroad (CRBA) what amounts to a statement of personal belief on the status of Jerusalem.
Powers conferred on Congress by the Constitution certainly give Congress a measure of authority to prescribe the contents of passports and CRBAs. The Constitution gives Congress the power to regulate foreign commerce, Art. I, §8, cl. 3, and this power includes the power to regulate the entry of persons into this country, see Henderson v. Mayor of New York, 92 U. S. 259, 270-271 (1876). The Constitution *211 also gives Congress the power to make a “uniform Rule of Naturalization,” Art. I, §8, cl. 4, and pursuant to this power, Congress has enacted laws concerning the citizenship of children born abroad to parents who are citizens of this country, see United States v. Wong Kim Ark, 169 U. S. 649, 688 (1898). These powers allow Congress to mandate that identifying information be included in passports and CRBAs.
The President also has a measure of authority concerning the contents of passports and CRBAs. The President has broad authority in the field of foreign affairs, see, e. g., American Ins. Assn. v. Garamendi, 539 U. S. 396, 414 (2003), and, historically, that authority has included the power to issue passports, even in the absence of any formal congressional conferral of authority to do so. See Haig v. Agee, 453 U. S. 280, 293 (1981) (explaining that “[p]rior to 1856, when there was no statute on the subject, the common perception was that the issuance of a passport was committed to the sole discretion of the Executive and that the Executive would exercise this power in the interests of the national security and foreign policy of the United States”). We have described a passport as “a letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer.” Id., at 292. This is apparent from the first page of petitioner’s passport, which reads as follows:
“The Secretary of State of the United States of America hereby requests all whom it may concern to permit the citizen/national of the United States named herein to pass without delay or hindrance and in case of need to give all lawful aid and protection.” App. 19.
Similarly, a CRBA is a certification made by a consular official that the bearer acquired United States citizenship at birth. See id., at 20.
Under our case law, determining the constitutionality of an Act of Congress may present a political question, but I do *212 not think that the narrow question presented here falls within that category. Delineating the precise dividing line between the powers of Congress and the President with respect to the contents of a passport is not an easy matter, but I agree with the Court that it does not constitute a political question that the Judiciary is unable to decide.