CADY, Chief Justice
(concurring specially).
I join the opinion of the court. I write separately to elaborate on the principles it expresses.
The State uses two criminal laws to prosecute Martha Martinez. One is the crime of identity theft. The other is the crime of forgery. The question is whether the prosecution of an unauthorized alien for these crimes in the manner pursued in this case violates the federal preemption doctrine.
Without question the authority to regulate immigration is “exclusively a federal power.” De Canas v. Bica, 424 U.S. 351, 354, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976). Moreover, under the Immigration *758 Reform and Control Act, Congress has clearly decided not to impose criminal penalties on aliens who seek or engage in unauthorized employment. Arizona v. United States, 567 U.S. 387, 406, 182 S.Ct. 2492, 2505, 183 L.Ed.2d 351 (2012). Any state law contrary to this approach is an impediment to the regulatory power of Congress and contrary to the Supremacy Clause of the United States Constitution. See id. Thus, no state may impose criminal penalties on unauthorized employees.
The crime of identity theft does not conflict with the federal preemption doctrine on its face. It criminalizes the fraudulent use of identification information of another “with intent to obtain credit, property, services, or other benefits.” Iowa Code § 715A.8(2) (2013). This crime is elevated from an aggravated misdemeanor to a felony when the value of the credit, property, services, or other benefit obtained exceeds $1000. Id. § 715A.8(3). Identity theft is a serious crime, and states are normally free to prosecute violators, whether citizens or aliens.
Yet, the State in this case has not just prosecuted an unauthorized alien for using false information, but has prosecuted the unauthorized alien for using the false information to obtain employment and to earn wages from that employment. Consequently, the State has used the law in a way to criminalize the conduct of an unauthorized alien who applied for and obtained a job with false identification and earned wages from the job. While the State could use the crime to prosecute an unauthorized alien for a variety of conduct related to identity theft, the conduct here is tied to a narrow area controlled by Congress.
It is important to observe that the United States of America is bound together by shared constitutional values. These national values are protected by the preemption doctrine from state laws that directly contravene them, just as they are protected from state laws that would work against them in less obvious ways. Courts have played a critical role in seeing through state laws that may appear neutral and benign on their face, but work subtly or indirectly to violate a fundamental precept of our Federal Constitution. This has been observed in a variety of areas. For example, courts have been vigilant to strike down state laws that indirectly interfere with the right to vote, just as they would with state laws that would attempt to do so directly. See Harper v. Va. State Bd. of Elections, 383 U.S. 663, 668-69, 86 S.Ct. 1079, 1082, 16 L.Ed.2d 169 (1966). Likewise, in the area of discrimination, the Court has long held,
Though the [state] law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.
Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). Simply put, “The Constitution does not make judicial observance or enforcement of its basic guaranties depend on whether their violation appears from the face of legislation or only from its application to proven facts.” Yakus v. United States, 321 U.S. 414, 484, 64 S.Ct. 660, 696, 88 L.Ed. 834 (1944) (Rutledge, J., dissenting).
In this case, the crime requires the job applicant to secure employment and begin earning wages in order to satisfy the criminal element of value. See Iowa Code § 715A.8(3). The State argues the law is permissibly intended to protect potential victims of identity theft, but “any state law, however clearly within a State’s ac *759 knowledged power, which interferes with or is contrary to federal law, must yield.” Free v. Bland, 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962); see also Henderson v. Mayor of N.Y., 92 U.S. 259, 272, 23 L.Ed. 543 (1875) (“[N]o definition of [the state police power], and no urgency for its use, can authorize a State to exercise it in regard to a subject-matter which has been confided exclusively to the discretion of Congress by the Constitution”).
The identity theft law may not specifically target unauthorized workers or be the full frontal assault on the employment of unauthorized aliens found prohibited in Arizona, 567 U.S. at 406-07, 132 S.Ct. at 2505, but the outcome, nevertheless, is not saved from the doctrine of federal preemption. See Gade v. Nat’l Solid Wastes Mgmt. Ass’n, 505 U.S. 88, 105, 112 S.Ct. 2374, 2386-87, 120 L.Ed.2d 73 (1992) (“Although ‘part of the pre-empted field is defined by reference to the purpose of the state law in question, ... another part of the field is defined by the state law’s actual effect.’” (alteration in original) (quoting English v. Gen. Elec. Co., 496 U.S. 72, 84, 110 S.Ct. 2270, 2278, 110 L.Ed.2d 65 (1990)). As applied to unauthorized aliens who use identification information in seeking employment, the law interferes with the efforts of Congress to regulate matters governing unauthorized alien employees every bit as it interfered in Arizona.
The crime of forgery as used in this case also violates the preemption doctrine. This result is only more obvious. The holding in Arizona discussing a state alien registration statute needs only a few words changed to illustrate the conflict with the preemption doctrine in this case:
[Iowa] contends that [Iowa Code section 715A.2(2)(a)(4)] can survive preemption because the provision has the same aim as federal law and adopts its substantive standards. This argument not only ignores the basic premise of field preemption—that States may not enter, in any respect, an area the Federal Government has reserved for itself—but also is unpersuasive on its own terms. Permitting the State to impose its own penalties for the federal offenses here would conflict with the careful framework Congress adopted.
Arizona, 567 U.S. at 402, 132 S.Ct. at 2502. By imposing state criminal penalties for “forgery ... to [obtain] employment” on top of the existing federal system regulating the employment of aliens, Iowa Code section 715A.2(2)(a)(4) robs the federal government of the discretion it has so carefully reserved. It may not do so. That discretion, ever decreasing in its availability, see Padilla v. Kentucky, 559 U.S. 356, 363-64, 130 S.Ct. 1473, 1480, 176 L.Ed.2d 284 (2010), is crucial to the federal scheme. See Arizona, 567 U.S. at 396, 132 S.Ct. at 2499 (“Discretion in the enforcement of immigration law embraces immediate human concerns.”); Gabriel J. Chin & Marc L. Miller, Broken Mirror: The Unconstitutional Foundations of New State Immigration Enforcement, in Strange Neighbors: The Role of States in Immigration Policy 167, 170 (Carissa Byrne Hessick & Gabriel J. Chin, eds. 2014) (“[T]he discretion inherent in the federal immigration regime, and in federal criminal enforcement more generally—the power to charge or not, to decide what to charge, and to choose whether to pursue civil or administrative measures—is itself a fundamental part of the law of immigration.”). State authority is limited by “the scope of [its] police powers.” Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 146, 83 S.Ct. 1210, 1219, 10 L.Ed.2d 248 (1963). No definition of the State of Iowa’s police powers would authorize it to regulate immigration. See Henderson, 92 U.S. at 272.
*760 These state laws, whether by design or effect, have intruded in an area wholly occupied by the federal government. They are therefore preempted by Article VI, Clause 2 of the U.S. Constitution.
Wiggins, J., joins this special concurrence.