Ex parte BAKLEY et ux.

(District Court, E. D. Virginia. September 29, 1906.)

Habeas Corpus—Unlawful Enlistment of Minor—Right of Parents to Discharge.

    The parents of a minor son under the age of 18 years, who has enlisted in the navy without their knowledge or consent, in violation of Rev. St. § 1419 [U. S. Comp. St. 1901, p. 1007], are entitled to his discharge on habeas corpus, and their right cannot be denied because of contemplated or possible court-martial proceedings against the minor for fraudulent enlistment, especially where, between the time demand for his discharge was made by the parents and the procuring of the writ, several months elapsed, during which no proceedings were taken against him.

    [Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Habeas Corpus, § 16.]

Habeas Corpus.

Mary Philbrook and A. B. Dickinson, for petitioners.
Robert H. Talley, Asst. U. S. Atty., for United States.

WADDILL, District Judge. This is a petition of Zebedee F. Bakley and Bertha Bakley, his wife, for a writ of habeas corpus, setting forth that their son, Alfred F. Bakley, a boy of the age of 17 years, enlisted in the United States navy without the consent of his parents or guardians, and is now unlawfully restrained of his liberty by Albert C. Dillingham, Commander United States Navy, on the United States receiving ship Franklin, lying in the waters of the Elizabeth river, in the Eastern district of Virginia, and praying for his discharge from such custody. The petition is duly sworn to by the petitioners, and the respondent in his return sets up the enlistment of said Alfred F. Bakley on the 14th day of March, 1906, he representing himself as of the age of 21 years; that said child is held under and by virtue of such enlistment, which was a fraudulent enlistment, assuming the facts to be true as set forth in said petition; and that he had been in the navy since the time of his enlistment and duly received compensation therefor. The return further avers that on the 24th day of July, 1906, more than a week before the suing out of the writ of habeas corpus, the said Alfred F. Bakley was "detained and recommended" for trial by general court-martial for fraudulent enlistment in the United States navy. With said return was filed a copy of the enlistment record of the said Alfred F. Bakley. Upon the hearing no evidence was offered by the government, and the evidence adduced by the petitioners, including the

proper birth certificate, established that said Alfred F. Bakley was the son of the petitioners; that he was under the age of 18 years at the time he entered the navy, being at that time just 17 years of age; and that he enlisted without the knowledge or consent of his parents. Petitioners further proved that they demanded possession of the boy about the 21st of March, 1906, within one week of the enlistment, by written communication to the Navy Department, advising it of the age of the boy and that he had enlisted without their knowledge or consent. No copy of this communication was preserved by the writer, but its receipt was duly acknowledged on the 24th of the same month, as follows:

"Replying to your letter of the 21st instant, the Chief of the Bureau directs me to state that when Alfred F. Bakley enlisted he made oath that he was 21 years old. This oath must be accepted by the Bureau as correct until positive evidence is produced to the contrary. You are informed, however, that upon the presentation of such evidence the Bureau will have no alternative but to bring Bakley to trial by general court-martial for fraudulent enlistment."

Subsequently on the 17th day of July, 1906, counsel for the petitioners addressed a communication to the Navy Department, informing them of the facts and circumstances of the enlistment of the boy, and requesting his discharge from the service. To this communication no reply was made. On the 23d of July, a further communication was sent to the department by counsel, informing it of the writing of the former letter and of the parents' need of the support of the boy, and again asking for his discharge, and with this communication an affidavit of the parents was forwarded, setting forth the correct age of the boy and the fact of their lack of knowledge or the giving of their consent to his enlistment: and on this same day a letter was written by the same counsel to the commanding officer of the United States receiving ship Franklin, upon which ship the boy was detained, informing him of the fact of the parents' desire to secure the boy's release, and inclosing a copy of the affidavit sent to the department, saying in the letter that they had been advised it was necessary that the same should be filed, and also asking to be given, as far as the officer to whom it was addressed was at liberty to state, any information as to the procedure necessary to secure the boy's release, and offering to furnish any additional affidavits needed. No reply was made by the Navy Department at Washington to either of the letters of counsel; but on the 24th of July, A. C. Dillingham, Captain U. S. Navy, commanding the Franklin, replied to the letter, saying, among other things, that the only action that the parents could take in the premises was to apply for a writ of habeas corpus, and that with the evidence contained in the affidavit sent him it was his duty to report Bakley to the Navy Department for fraudulent enlistment; this letter also advising counsel that the last Congress had passed a law requiring the recruiting officers to obtain other evidence than the recruit's statement concerning his age, etc. See Acts 59th Cong. pt. 1, p. 555; Act June 29, 1906, 34 Stat. 555, c. 3590.

These being the undisputed facts of the case, the petitioners insisted upon the discharge of the boy, and the government asked that he should

not be released, but held for court-martial under the laws, rules, and regulations governing fraudulent enlistment in the navy.

The case of Ex parte Lisk (D. C.) 145 Fed. 860, recently. decided by this court, would seem to be conclusive of this case, save for the fact that here the government seeks to set up the threatened court-martial proceedings as a reason for the suspension of the habeas corpus proceeding. In the Lisk Case this contention was not made; but the proposition insisted upon was that an infant could not be released, even at the instance of the parent, who had not assented to his enlistment, because court-martial proceedings might be instituted. This is the only difference between the two cases. Here, upon the fourth demand for the boy's release, and months after the first request, he was reported to the Navy Department, to the end that court-martial proceedings might be ordered against him. No such proceedings were or have ever been inaugurated, if the report was ever made at all, and within one week of the time of the notice of such threatened report this proceeding was regularly commenced by the parents of the child, in accordance with the government's suggestion as to the proper method to secure his release. This court, in the Lisk Case, supra, endeavored to make clear the fact that, so far as the parent who had not consented to his child enlisting in the navy within the prescribed age was concerned, such child could not be considered and treated, in a proceeding by the parent asking for his release, as lawfully in the navy or amenable to naval rules and discipline; and the court perceives no good reason for departing from the decision thus reached. However much the child may personally be under naval authority and control, and a member de jure as well as de facto of the navy, still, as against his parents not consenting to his enlistment, if all the provisions of the acts of Congress, fully set forth in the Lisk Case, are to be given effect to, he cannot be considered or treated as subject to naval authority and rules and regulations in an appropriate proceeding inaugurated by his parents to secure his release. There is no substantial difference between this and the Lisk Case. The writ of habeas corpus ought not to be denied to a parent seeking the custody of his child, confessedly in the unlawful possession of another, because further proceedings looking to his detention for trial by court-martial are contemplated or may be inaugurated. In re Carver (C. C.) 103 Fed. 624, 626; In re Baker (C. C.) 23 Fed. 30. They may never be instituted at all, and it would look like trifling with justice to so treat the parent's request. This would seem to be correct in any case; but surely, where such suggestion of a court-martial was only made in answer to the repeated demands for possession of the child, the court should treat the parent's request, not as made at the time of the filing of the petition for the writ of habeas corpus, but as of the date of the first demand made for the child, and in this view in no event would the so-called court-martial proceeding avail to deny the parents' right here.

From what has been said, this case would clearly seem to be one in which the relief sought by the petitioners should be granted. It is true the decisions on the subject may be said not to be entirely harmonious; indeed, considerable contrariety exists. But it is believed that no

case goes so far as to hold that the habeas corpus proceedings should be suspended because of the institution of court-martial proceedings, other than that of United States v. Reaves, 126 Fed. 127, 60 C. C. A. 675, a decision of the Circuit Court of Appeals for the Fifth Circuit. The cases to the contrary are abundant, state and federal, the state courts having formerly exercised jurisdiction in this class of cases; and the court is convinced that the learned judges who decided the Reaves Case, supra, being a case of desertion, would not have so held under the facts and circumstances of this case. Much of the confusion that apparently exists respecting the subject under consideration arises, in the estimation of the court, either from confounding cases where, as at common law, there was no statutory inhibition in favor of the parent against the enlistment, and such contracts were valid, or cases instituted by the minor personally, with those inaugurated by the parent, or from a misapprehension of the two decisions of the Supreme Court of the United States (Ex parte Grimley, 137 U. S. 147, 11 Sup. Ct. 54, 34 L. Ed. 636; Morrissey v. Perry, 137 U. S. 157, 11 Sup. Ct. 57, 34 L. Ed. 644), and in the effort to apply the principles there decided, under the peculiar facts and circumstances of those cases, to a case like the one under consideration here. Both cases were for desertion of the most aggravated character, in which the deserters themselves, two adults, were seeking to claim the exemptions prescribed by the statute.

In the Grimley Case, the petitioner was 40 years old at the time of his enlistment, and swore he was under 35, the prescribed maximum age to enter the service, and after desertion and arrest therefor he endeavored to secure his discharge on the ground that he was not subject to enlistment, because he was too old; and the court rightfully held that, as his relation with the government was a contractual one of a kind that changed his status, such defense might be interposed by the government, but not by him. In discussing this case the court did say that while in the army he was a soldier de jure, as well as de facto, and subject to military jurisdiction and authority, and that the civil courts on habeas corpus were confined to the ascertainment of the jurisdiction of the court, and not to a review of its proceedings; still there is nothing new in the latter proposition, and the same should not preclude a parent from securing the discharge of his child, enlisted without his consent, as well after as before court-martial. In re Carver (C. C.) 103 Fed. 624, 626. A parent under such circumstances in no manner asks a review of the court-martial proceedings. They remain in all respects valid as to the child. The parent says he is not bound by them, since he was not a party to them, and that the child is no less and no more in the navy after court-martial proceedings than before, and that so far as he is concerned he is illegally detained in the service, in contravention of the plain acts of Congress, and he is entitled to his discharge. Moreover, in deciding this case, it will be observed that the court, speaking through Mr. Justice Brewer, said:

"By enlistment the citizen becomes a soldier. His relations to the state and the public are changed. He acquires a new status, with correlative rights and duties; and, although he may violate his contract obligations, his status as a soldier is unchanged. He cannot of his own volition throw

off the garments he has once put on, nor can he, the state not objecting, renounce his relations and destroy his status on the plea that, if he had disclosed truthfully the facts, the other party, the state, would not have entered into the new relations with him, or permitted him to change his status. Of course, these considerations may not apply where there is insanity, idiocy, infancy, or any other disability which, in its nature, disables a party from changing his status or entering into new relations."

In Morrissey v. Perry, supra, the deserter entered the service by reason of a false oath while under the prescribed age, and continued therein less than a month, deserted, and remained away for 5½ years, and until he had attained his majority, when he was arrested for desertion, and sought by habeas corpus to secure his release, because he was not of the requisite age when he enlisted. The court refused the relief sought, holding that the contract of enlistment was valid so far as the child was concerned; the parents making no claim in his behalf. Mr. Justice Brewer, also speaking for the court in that case, said:

"Section 1117, Rev. St. [U. S. Comp. St. 1901, p. 813], provides that 'no person under the age of twenty-one years shall be enlisted or mustered into the military service of the United States, without the written consent of his parents or guardians: Provided, that such minor has such parents or guardians entitled to his custody and control.' But this provision is for the benefit of the parent or guardian. It means simply that the government will not disturb the control of parent or guardian over his or her child without consent. It gives the right to such parent or guardian to invoke the aid of the court and secure the restoration of a minor to his or her control; but it gives no privilege to the minor. * * * The contract of enlistment was good so far as the petitioner is concerned. He was not only de facto, but de jure, a soldier, amenable to military jurisdiction. His mother not interfering, he was bound to remain in the service."

These two cases, while upholding fully the contract of enlistment between the soldier and the government, having proper regard to the vigor and efficiency of the army and navy and the necessity of maintaining the same, expressly recognize the validity of every contention here made in behalf of the parents' right. In the Grimley Case the court said:

"These considerations may not apply, where there is insanity, idiocy, infancy, or any other disability which, in its nature, disables the party from changing his status."

And the court, in the further progress of the opinion, emphasized the fact of the invalidity of such contracts, when there existed a natural wrong in the manner in which they were entered into. Can there be a doubt in this case that there not only existed the element of infancy, but the express disability arising from the provisions of the act of Congress which invalidated the contract so far as the parent not consenting to the enlistment was concerned? Surely the manner in which the same was effected by the false oath of the infant was, as to the parent, a natural wrong inherent in the inception of the undertaking.

The Morrissey Case could not well have been stronger in its recognition of the parent's rights. It says in clear and unambiguous language that the provision in question was for the benefit of the parent or guardian, and, not content with that, emphasized what was meant, and how the right could be secured:

"It means simply that the government will not disturb the control of the parent or guardian over his or her child, without consent. It gives the right to such parent or guardian to invoke the aid of the court to secure the restoration of the minor to his or her control."

Further, the court, discussing the minor's status, said:

"He is not only de facto, but de jure, a soldier, amenable to military discipline. His mother not interfering, he was bound to remain in the service."

This has but one meaning—that, his mother intervening, he was not bound to remain in the service; that the parent or guardian was entitled to his control, and upon the court's intervention he should be restored to them.

The Circuit Court of Appeals for this Circuit, in the case of Solomon, Sheriff, v. Davenport, 87 Fed. 318, 30 C. C. A. 664, took the same view of the law, namely, that the exemption of the statute was one which the parent could avail of, but not the soldier, and refused to discharge the soldier. If it be said that these decisions do not maintain the position here contended for on the part of the parents for the release of this minor child, to whose enlistment they had not assented, surely they cannot be said to maintain the government's position in this case. Here we have no deserter, no infraction of military discipline, but merely a case where parents, finding their minor child enlisted in the navy in plain violation of law, within 10 days of such enlistment are beseeching the government for his release. This is met, not by the reply that "You shall have him, since we were imposed on, and are manifestly not entitled to him," but, on the contrary, by the cold answer that "To make known your request, to press your demands, means only that he will be proceeded against by court-martial for an offense of fraudulent enlistment, which will defeat your right of restoration." The law, it would seem in this case, is too simple and plain that any such result as this should be brought about, either from anything contained in its letter or spirit. It is as follows (section 1419, Rev. St. [U. S. Comp. St. 1901, p. 1007]):

"Minors between the ages of 14 and 18 years shall not be enlisted in the naval service without consent of their parents or guardians."

This language admits of no cavil or doubt as to its meaning; and to say that a parent seeking to secure possession of his child, wrongfully taken into the navy in contravention of this act, is to be refused and denied such right in the manner here contended for, would be substantially to nullify the law by reason of a court-martial proceeding inaugurated by one wrongdoer against the other—would be in effect to use the law enacted for the parents' benefit, as a medium for their punishment. In re Davison (C. C.) 21 Fed. 618; In re Baker (C. C.) 23 Fed. 30; In re Carver (C. C.) 103 Fed. 624.

Judge Jones, of the Middle District of Alabama, in Ex parte Reaves (C. C.) 121 Fed. 848, being the decision of the lower court in the case above cited, in an elaborate and exceptionally able opinion, discussing this particular phase of the distortion of this act of Congress, said:

"It is a maxim of the law that no power can be exercised indirectly which cannot be lawfully exercised directly, and whether or not the exercise of the power is lawful must be tested and determined by its ordinary and natural

effect' upon the right against which the exercise of the power is directed. Henderson v. Mayor, 92 U. S. 259, 23 L. Ed. 543; Joseph v. Randolph, 71 Ala. 499, 46 Am. Rep. 347. If the minor, by doing a wrongful act as against the father, and the government, by doing a further wrong to the father, in attempting to enforce an enlistment made in violation of his wishes, can impress upon the minor, in behalf of the government, as against the father, a status which suspends for any period of time the parent's right to the custody and control of his minor child, it results inevitably that the joint wrong of the minor and the government forfeits, in favor of the government, the wrongdoer, as against the innocent and nonassenting father, rights the statute intended to preserve and safeguard for the father. If this is not doing by indirection what cannot be done directly, it is impossible to present an illustration which would violate the maxim. Magdalen College Case, Coke's Reports, vol. 11, p. 66; Wells v. People, 71 Ill. 532."

The law under consideration was enacted in behalf of the parents and guardians, to the end that their children, of whom they were the natural guardians and protectors, or who were under their lawful direction, should not be wrested from their care and control. Manifestly such an act of Congress should be given a reasonable and liberal interpretation, in order that its purpose and intent, its humane provisions, may not be frustrated and destroyed. The lawmaking power surely went far enough in the interest of the public, and of the possible necessities of the army and navy, when it provided for enlistment of 14 year old children at all; and the prerequisite that the assent of the parent or guardian should be required would seem to have been dictated by the plainest principles of humanity. The desirability of maintaining the strength and efficiency of the military branch of the government is fully appreciated; but, in dealing with this prescribed class of possible recruits, the act of Congress in question, and its manifest purpose and intent, has to be taken into account, and the necessities, certainly in time of peace, cannot be such that those of this class of tender years, between 14 and 18, have to be held in the public service without the consent of their parents or guardians, in plain violation of the act of Congress.

The seriousness, importance, and far-reaching consequences of the questions involved to the parents of the land, cannot be well overestimated. What has happened to the petitioners in this case is liable to take place with any other parents; and if the government's contention be the correct view of the law, then, so far as this large and most unfortunate class of the youth of the land are concerned, the control of parents and guardians must give way to that of the army and navy officials, who, in the nature of things, cannot deal with those committed to them either as children or individuals, but must treat all alike as soldiers; and for the care, love, and affection of tender parents, mother and father, and other loved ones, will be substituted that of the military command, enforceable by the rude decrees of a court-martial. Wayward children are the ones for whom parents ever have the greatest anxiety and solicitude: and to deny to them their right to the care and control of such children, unless required so to do by the plain mandate of the law, would seem to be harsh in the extreme.

The infant, Alfred F. Bakley, will be discharged.