Ex parte AVERY.

(District Court, E. D. North Carolina, at Wilson. July 14, 1916.)

1. ARMY AND NAVY ⊙⇒19—ENLISTMENT OF MINOR—RIGHT OF PARENTS TO DISCHARGE.

The enlistment of a minor in the army is valid as to him, but is void-able at the instance of the parent or guardian, who did not consent, and he is entitled to the discharge of the minor on habeas corpus, unless there are pending charges against him which give a court-martial priority of jurisdiction.

[Ed. Note.—For other cases, see Army and Navy, Cent. Dig. §§ 45–50; Dec. Dig. ⊙⇒19.]

2. ARMY AND NAVY ⊙⇒19—ENLISTMENT OF MINOR—RIGHT OF PARENTS TO DISCHARGE.

A minor, without the knowledge or consent of his parents, enlisted in the National Guard of a state after it had been called into the government service, stating his age at 21 years. Immediately on learning of the enlistment, and before he had been given any allowances, his parents went to the officers of the regiment, stated his minority, and demanded his discharge, which was refused. They followed to the concentration camp, and again made the demand, and on its refusal brought proceedings in habeas corpus. On the same day, but before the filing of the petition, because of the opposition of his parents, the minor had refused to enlist in the service of the United States, and the officers thereupon caused his arrest and confinement in his quarters, intending to have him tried by court-martial for fraudulent enlistment; but he was not told the reason for his confinement, nor notified of any charge against him, and in fact no charge was made. *Held*, on the facts, that there had been no such military proceeding as to deprive the civil court of jurisdiction, and that the parents were entitled to the minor's discharge.

[Ed. Note.—For other cases, see Army and Navy, Cent. Dig. §§ 45–50; Dec. Dig. ⊙⇒19.]

---

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition of George S. Avery and Lila Avery for a writ of habeas corpus for the discharge from the National Guard of North Carolina of Richard Sandford Avery, a minor. Writ granted.

David L. Ward, of New Bern, N. C., for petitioners.

W. C. Rodman, of Washington, N. C., and S. T. Ansell, of Washington, D. C., for respondent.

CONNOR, District Judge. On July 7, 1916, George S. Avery filed his petition herein, in which his wife, Lila Avery, joined, alleging: That he was a resident of the county of Craven, in the Eastern district of North Carolina. That he was the father, and his wife the mother, of Richard Sandford Avery, a minor of the age of 20 years. That on June 22, 1916, their said son, without their knowledge or consent, enlisted as a private in Company B, Second Regiment, North Carolina National Guard, of which company Capt. A. C. Hill is in command. That Col. W. C. Rodman is the colonel and in command of the Second Regiment of National Guard. That petitioner has requested Capt. A. C. Hill and Col. W. C. Rodman to discharge and release their said son from military service, explaining to them that the enlistment of the said minor son was without their knowledge or consent. That they refused, and still refuse, to discharge or release their said son and to restore him to the custody of petitioner. That said Richard Sandford Avery is now restrained of his liberty, and petitioner is deprived of the custody and service of his said son, by Capt. Hill and Col. Rodman. That Company B, Second Regiment, National Guard of North Carolina, is a part of the United States Army, and subject to the control of the Secretary of War, under the advice of the Commander in Chief of the United States Army. Pursuant to said petition, the writ was issued on July 7, 1916, directed to respondents, and, on July 8, 1916, duly served upon them by the United States marshal. On July 14, 1916, the writ was returned, and Richard S. Avery produced before me at Wilson, N. C.; the hearing having been, by consent, continued to that day.

Petitioner, with leave of the court, amended his petition, alleging that he and his wife are the parents of eight children, six of whom are dependent upon them for support; that their son, Richard Sandford, is the only one of their said children who contributes anything to their support; that they are poor people, and are in actual need of the wages of their said son to aid them in caring for their other children. For return to the writ, respondents allege: That they hold the said Richard Sandford Avery by authority of the United States, as a soldier of the National Guard of North Carolina under the call and orders of the President of the United States. That said Richard Sandford Avery was duly enlisted as a soldier in the National Guard of North Carolina, in the service of the United States, at Kinston, N. C., on June 22, 1916, for term of 3 years. If the said Avery was not 21 years of age at the time of his enlistment, he being then a minor, he did fraudulently enlist in the military service of the United States, by falsely representing himself to be over 21 years of age, to wit, 21 years, 1 month, and 25 days, and since said enlist-

ment has received allowances thereunder. That charges are being prepared and steps have been taken to bring him before a general court-martial for fraudulent enlistment, which said steps had been taken at the time of the filing of the petition herein, and he was at said time, under arrest and confined to quarters.

Upon the hearing testimony was introduced from which I find the following facts:

. Company B, Second Regiment, National Guard of North Carolina, was duly organized in accordance with the provisions of chapter 102, section 4848 et seq., Revisal N. C. J. F. Brown was, on and prior to June 19, 1916, captain of said company. Said Company B is a component part of the Second Regiment, National Guard of North Carolina. On June 19, 1916, the President of the United States, pursuant to the provisions of section 4, Act Jan. 21, 1903 (32 Stat. 776, c. 196), as amended by section 3, Act May 27, 1908 (35 Stat. 399, c. 204 [Comp. St. 1913, § 3045]), Fed. Stat. Anno. 1909, p. 347, called out said company and regiment. That in accordance with said call the said company was ordered to rendezvous at Kinston, N. C., and was thereafter ordered to Camp Glenn, near Morehead, N. C.

On June 22, 1916, at Kinston, N. C., the said Richard Sandford Avery, without the knowledge or consent of either of his parents, being then 20 years of age, signed the contract of enlistment as prescribed by law, in the presence of Capt. Brown, then commanding Company B, Second Regiment, National Guard of North Carolina, in which he represented himself to be over 21 years of age, and was thereupon enlisted in said company as a private. He received a uniform and such other allowances as by law he was entitled as a member of said company and regiment.

Immediately upon learning that their son had enlisted, petitioner George S. Avery and his wife, at Kinston, before said company went to Camp Glenn, informed the captain in command that their son was not 21 years of age, demanding his release and discharge, which was refused. After said Company B went to Camp. Glenn, petitioner and his wife went there, and again informed the captain, and the colonel commanding the Second Regiment, of the age of their son and again demanded his discharge and release. On July 7th the officers in command of said company and regiment informed the members of the company and regiment, including said Richard S. Avery, of the provisions of the recent act of Congress providing for enlistment in the United States Army, and invited said Avery, together with other members of his company, to enlist in accordance with the provisions of said act. Said Avery was willing to do so, except for the objection of his parents, and for that reason only declined to enlist, whereupon, and without any reason being assigned to him, and without notice, information, or suggestion of any charge against him of the violation by him of any law, military or civil, or breach of duty, he was placed under arrest, and so continued until the service of the writ herein. The officers in command ordered his arrest, and caused him to be held, for the purpose, and with the intention, of bringing him before a general court-martial, to be tried upon the charge of fraudulent enlist-

ment. The arrest was made during the day of July 7, 1916. The petition for the writ herein was received by the judge at 7:20 p. m. on July 7, 1916, signed and immediately placed in the mail, directed to his counsel at Morehead City, received by him, and delivered to the marshal, who served same during the morning of July 8, 1916. No charges were then prepared, nor have any charges been at this time prepared, against Avery, nor was he informed, nor did he know, upon what charge he was held under arrest, until the time of the hearing herein. He supposed that he was placed and held under arrest for refusing to enlist under the terms of the last act of Congress, relating to the subject of enlistment. The arrest consisted of his being detained in his quarters. No general court-martial had been ordered at the time the writ was served or at the time of this hearing.

[1] It is well settled by numerous and controlling authority that a soldier enlisting in the army, not being 21 years of age, cannot himself avoid his contract of enlistment. In Re Morrissey, 137 U. S. 157, 11 Sup. Ct. 57, 34 L. Ed. 644, Mr. Justice Brewer says that the contract of enlistment is valid so far as the soldier is concerned; it creates a status with the government, which will not be disturbed, upon his application. The parent or guardian may, upon a writ of habeas corpus, invoke the aid of the court and secure the restoration of the minor to his custody. In re Bakley (D. C.) 148 Fed. 58, affirmed 152 Fed. 1022, 82 C. C. A. 659 (C. C. A. Fourth Circuit). In Ex parte Reaves (C. C.) 121 Fed. 848, Jones, District Judge, writes an exhaustive and interesting opinion, which was reversed upon another point by the Circuit Court of Appeals, Fifth Circuit, 126 Fed. 127, 60 C. C. A. 675.

[2] Respondents, frankly conceding the controlling authority of these and other decisions to the same effect, suggest that by representing himself to be over 20 years of age and thereby securing enlistment, followed by obtaining allowances, the son has violated the provisions of law making fraudulent enlistment and receiving allowance and pay a crime, subjecting him to trial before a court-martial, and, upon conviction, punishment by imprisonment. They further insist that, at the time the writ was issued and served, proceedings had been instituted and were then pending for his trial, and that he was at that time under arrest, and was then held in custody for that purpose. It has been decided, and I think correctly so, that while the parent is entitled to demand and have restored to him the custody of his minor son, who has, without his consent, enlisted, yet if, at the time the writ is issued, or probably at the time it is served, proceedings have been instituted, and he is held for trial upon charges preferred, for the commission of a crime against the laws of the United States of which a court-martial has jurisdiction, the court will not discharge him from custody and deliver him to his parents. In Re Carver (C. C.) 103 Fed. 624, Putnam, Judge, said:

"It seems to be well settled by the decisions, and it is also consonant with the rules of law framed to prevent unseemly conflicts between different judicial tribunals, that ordinarily, where charges have been preferred, and a court-martial having jurisdiction has been ordered, and the person charged has been held to answer, the jurisdiction which attaches in favor of the

court-martial will exclude that of a civil tribunal in which proceedings for a writ of habeas corpus may afterwards be commenced. Under such circumstances, the civil tribunal must wait until the court-martial has concluded its proceedings, and even until the sentence, if any, imposed by the court-martial, has been worked out; and this rule might apply even where an arrest had followed in consequence of the charges, although preceding the organization of the military court."

In Re Miller, 114 Fed. 838, 52 C. C. A. 472, the soldier after enlisting, not being 21 years of age, without the consent of his parents, deserted. Upon the return to a writ of habeas corpus, issued upon the petition of his parents, it appeared that, before the writ issued, charges had been preferred against the son, charging him with desertion and fraudulent enlistment, and that he would be brought to trial as soon as practicable before a court-martial convened for that purpose, and that "the prosecution had begun before the suing out of the writ." Judge Shelby said:

"The question to be decided is whether the court-martial has jurisdiction to try the prisoner on the charges preferred against him. If it has jurisdiction, the civil courts have no right to interfere. If it is without jurisdiction, it is the duty of the civil courts to discharge the prisoner."

After a careful examination of the authorities, reversing the District Judge, it was held that while the parents were entitled, on account of the infancy of the son, to have him discharged, their right could not be so enforced as to take him from the custody of the officers, when he was held to answer charges preferred against him for violating the law before a court having jurisdiction to hear and determine the charge. Accepting this as the correct declaration of the law and the rights of the petitioner, the question arises whether, upon the facts found in this case, the jurisdiction of the court-martial had attached when the writ was served. It is immaterial in this case whether the jurisdiction had attached at the date of the issue or the service of the writ, because there was no change in the status of the soldier or the proceeding against him between these dates. An examination of the facts found in the decided cases will aid somewhat in the decision of the question presented here.

In Miller's Case, supra, the petition averred that, at the time it was filed, the soldier was detained in custody on the charge of having deserted the military service of the United States. The return of the officer set forth the enlistment, desertion and arrest, and *that charges had been preferred against him and the prosecution thereon begun.* The question presented in that case was whether, the soldier being a minor and having enlisted without the consent of his father, the enlistment was not, as against him and his right to the custody of his son, absolutely void. This contention was ruled against petitioner. The court treated the prosecution as having begun before the writ issued, and refused to interfere with the custody of the respondent.

In the Reaves Case, supra, the son, under the requisite age, had, without the consent of his parents, enlisted in the Navy and thereafter deserted. The petition for the writ of habeas corpus was filed by his father. Judge Pardee thus states the case:

"The minor had deserted the naval service; the executive authority, as appears by the return, had acted, by proclaiming him a deserter and offering a reward for his arrest, and he had been arrested before the writ was issued; and the case further shows that within a reasonable time after the arrest, and before the judgment in the Circuit Court, the Secretary of the Navy preferred formal charges for fraudulent enlistment and desertion. These charges can only be tried before a naval court-martial. Under this state of facts, on principle and authority, it must be held that the jurisdiction of the naval courts had fully attached, and that the naval authorities are entitled to the custody of the minor, notwithstanding the enlistment was without the consent of his father and voidable on his demand."

There can be no doubt that, in both of these cases, the jurisdiction of the court-martial had attached, at the time the petition for the writ was filed. Judge Jones' opinion, holding that the parent was entitled to have the custody of his minor son, is based upon an interesting and well-considered discussion of the paramount right of the parent to the control and custody of his infant son, the enlistment as against him being void. The point of divergence between the Circuit Court of Appeals and the District Judge is found in the status of the son created by the enlistment. Treated simply as a contract between the son and the government, voidable by the parent, there is much force in Judge Jones' reasoning. Whether any distinction may be found in a case wherein the essential element in the charge upon which the minor is held is the enlistment, and when, as in both of the cases cited, there was also the charge of desertion, may be open to discussion.

In Re Bakley, supra, Judge Waddill (E. D. Va.) writes an interesting opinion, indicating a mental and sympathetic leaning to the views of Judge Jones. There are, however, elements in the case which are not found in the Reaves Case. Bakley, an infant, that is, within the age requiring the parents' consent to enlistment, without such consent, enlisted in the navy. While on the receiving ship in the Elizabeth river, held under the terms of his enlistment, and within a week after such enlistment, his parents by letter demanded his release, for the reason that he was below the age entitling him to enlist without their consent. This was refused, the naval authorities saying that the boy made oath that he was 21 years of age, and that they must accept such oath as correct until positive proof was produced to the contrary, and that "upon presentation of such evidence, the Bureau will have no authority but to bring Bakley to trial by a general court-martial for fraudulent enlistment." The parents addressed another letter to the Navy Department, to which no reply was received. Some days later another letter was sent, containing an affidavit as to the age of the son and the lack of knowledge or their consent to his enlistment. A letter of similar import was sent to the officer in command of the ship upon which the boy was detained. No reply was sent by the Navy Department, but the officer in command of the ship wrote to the parents that the only action which the parents could take in the premises was to apply for a writ of habeas corpus, and that, with the evidence contained in the affidavit sent him, it was his duty to report Bakley to the Navy Department for fraudulent enlistment. Upon the return of the writ, the foregoing facts being found, the government demanded that the son should be held for court-martial.

Judge Waddill held, in Ex parte Lisk (D. C.) 145 Fed. 860, that the statute which made a fraudulent enlistment a crime, subjecting the minor to trial and punishment by court-martial, did not include a minor who had enlisted without the consent of his parents, because such a person, so enlisting, could not be said to "belong to the Navy." Without pausing to discuss this opinion of the learned judge, we pass to a consideration of his discussion of the question whether the jurisdiction of the court-martial had attached before the writ was issued. He says:

"The writ of habeas corpus ought not to be denied to a parent seeking the custody of his child, confessedly in the unlawful possession of another, because further proceedings looking to his detention for trial by court-martial are contemplated or may be inaugurated. * * * They may never be instituted at all, and it would be like trifling with justice to so treat the parent's request. This would seem to be correct in any case; but surely, when such suggestion of a court-martial was only made in answer to the repeated demands [of the parent] for possession of the child, the court should treat the parent's request, not as made at the time of the filing of the petition for the writ of habeas corpus, but as of the date of the first demand made for the child, and in this view in no event would the so-called court-martial proceeding avail to deny the parent's right here."

In regard to the court-martial he says:

"No such proceedings were, or have been, inaugurated, if the report was ever made at all, and within one week of the time of the notice of such threatened report this proceeding was regularly commenced by the parents of the child, in accordance with the government's suggestion as to the proper method to secure his release."

As suggested, the attitude of the government savors somewhat of keeping the promise to the ear and breaking it to the heart, by saying to the parent: The express provision of the law declares the contract of enlistment void as to you. Your sole remedy is by petition for the writ of habeas corpus; but, if you seek this relief, you at once subject your son to a court-martial, resulting in the denial of the relief. The judgment in Bakley's Case, discharging the minor, was affirmed, per curiam, by the Circuit Court of Appeals of this Circuit. 152 Fed. 1022, 82 C. C. A. 659.

Unless some controlling authority is found, or unless the cases be distinguished, I should feel constrained to follow this decision. The reasoning of the learned judge, who gave the question careful and exhaustive examination, commends itself to my judgment. Assuming, as I do, that Capt. Brown did not know, at the time he took the enlistment, that the son was not 21, yet the fact remains that, representing the government, he and the son did enter into a contract, voidable at the option of the parents, who, immediately upon being informed thereof, notified him and demanded the release of their son. It is not suggested that he disbelieved them in regard to the age of their son, or called for proof, which they had and produced on the hearing —the family Bible. He doubtless supposed that he was not authorized to release the son. The parents continued to press their demand, following the company to Camp Glenn. It was the representative of the government, and not the petitioner, who was in default. The father, as appeared upon the petition, is an illiterate man. Up to the

moment that the son, in obedience to his duty to obey his parents, refused to enter into a second enlistment, the petitioner had the unquestionable right to demand the release of his son. There had been no suggestion to either the son or his father that the former had violated any law which subjected him to the jurisdiction of a court-martial. I cannot think, giving the most liberal construction to the rules of procedure in respect to the method of instituting a prosecution before a court-martial, that upon the admitted facts here such jurisdiction had attached, or that the power of the civil court to grant the relief to which the petitioner is otherwise entitled is obstructed.

I am not familiar with, nor have I been informed in regard to, the procedure essential to give a court-martial jurisdiction of a charge against a soldier in the military service. I assume that, from necessity, frequently, it is more summary than is prescribed in criminal proceedings in a civil court; but there are fundamental, essential principles, inhering in every system of procedure which affects life and liberty, which suggest the necessity of notice, however informal, of the character of the charge, with an opportunity to be heard. I cannot think that a summary arrest, with an undisclosed purpose in the mind of the commanding officer, can confer jurisdiction upon a court-martial neither in existence nor ordered, so as to preclude the parent from appealing to the civil courts for the enforcement of a right founded upon positive law, sanctioned by the strongest dictates of human nature.

I have thus far discussed the rights of the petitioner and the government upon the assumption that Avery enlisted as a soldier of the United States Army, and that the consent of his parents was essention to constitute a valid contract of enlistment as against them and their right to his custody. If he had enlisted prior to June 19, 1916, that being the day upon which the President called the National Guard of North Carolina into service, I assume that his status and the rights of his parents would have been governed by the provisions of section 4896 of the Revisal of 1905, which are, in all respects, the same as the federal statute in regard to enlistment in the United States Army. I assume, further, that upon the call by the President, followed by the assembling of Company B, at Kinston, its members became subject to the rules and regulations unless otherwise provided, controlling the army. Act Jan. 21, 1903, c. 196, § 11, 32 Stat. L. 776, as amended by section 7, c. 204, Act May 27, 1908, 35 Stat. 399 (Comp. St. 1913, § 3052), Fed. Stat. Anno. 1909, 347, provides that when the militia is called into active service their pay "shall commence from the day of their appearing at the place of company rendezvous." It would seem, therefore, that on June 22, 1916, when Avery enlisted, the company was in active military service, as a portion of the National Guard of North Carolina, of the United States. It is suggested, in a very helpful brief filed by Maj. Ansell, representing the government, that when the state, in response to the call of the President, furnishes an organized militia as a constituent part of the National Guard, the status of its members, as represented by the Governor, is fixed, and that parents who have, at that time, failed to seek and secure the

release of their minor sons, who have enlisted without their consent, are estopped from thereafter doing so. Maj. Ansell, who has rendered valuable aid to the court upon the hearing, frankly concedes that new, and sometimes difficult, questions are being presented under the order of the President mobilizing, in large number, in all of the states, the National Guard. Whatever doubt may have arisen upon the question suggested, it would seem, cannot arise in this case, because the minor did not enlist until after the National Guard of this state was called into service and had rendezvoused. The parents here could not have waived their rights by permitting the state to represent to the government that their son was over 21 or that they had consented to his enlistment. This question is interesting, and the views advanced by the judge advocate entitled to respectful consideration. It involves the question as to the extent to which acquiescence by the parent, while his son is a member of the National Guard under a voidable enlistment, will estop him, after the son is called into active service by the President, and receives pay and allowance, from asserting his right to avoid the contract of enlistment. I do not think that, upon the facts found here, the question is presented. The civil courts will not, upon such views as they may entertain in regard to the question of public policy involved, indulge in either a strict or liberal construction of the statutes regulating the subject of enlistment, as it is related to the rights of parents, but will endeavor to ascertain from the language used the intention of Congress, and enforce such rights accordingly.

With the aid of the decisions of the Supreme and other federal courts, in cases more or less in point, I am brought to the conclusion that the enlistment by Richard S. Avery was, as between the government and himself, valid, and established the status of a soldier in active service, imposing upon him the discharge of the duties prescribed by law, and obedience to the rules and regulations of the War Department, and entitling him to such rights and privileges as by law and such rules and regulations are conferred upon a soldier in the active service of the United States; that this status, with its resultant duties and rights, can be invalidated only by the parents or guardian, and until some action is taken by them for that purpose the minor son is a regularly enlisted soldier in the United States Army; that the parents are entitled to avoid the enlistment, and secure the custody of their son, by applying to the civil court for a writ of habeas corpus. If, before the petition is filed, a proceeding has been begun, in accordance with the law and the method of procedure prescribed by the regulations of the United States Army, in active service, against the son, for bringing him to trial before a court-martial, and the jurisdiction of such court has attached, the court having jurisdiction of the person and of the offense with which the soldier is charged, the civil court will not, upon the petition of the parent, take him from the custody of the respondent and deliver him to the custody of the parent. The civil court will confine its inquiry to the question of jurisdiction of the court-martial of the person and the crime charged against him, and whether such jurisdiction has attached

before the petition for the writ of habeas corpus was filed. It will not permit its jurisdiction to be ousted, or the right of the parent to be affected, by any action taken after the petition for the writ has been filed.

There can be no doubt of the status of the son, and that a court-martial has jurisdiction of the crime of fraudulent enlistment. The question which has given me most concern, in this case, is whether such jurisdiction had attached before, or at the time, the petition for the writ was filed. In Carver's Case, supra, Judge Putnam discharged the minor, upon petition of his father, notwithstanding the return showing that charges against the son had been preferred for fraudulent enlistment before the petition for the writ was filed. After stating the rule which precluded the jurisdiction of the civil court, he says:

"But it has no application merely because charges have been filed which have not been acted on by the executive department, and may never be acted on."

In Miller's Case, supra, it appears to have been conceded that, at the time the petition for the writ was filed, the son was detained in custody on the charge of desertion. Judge Shelby says:

"When an enlisted soldier is imprisoned by military authority upon a charge of desertion or other military crime, the * * * court will not interfere on habeas corpus when such military authorities have jurisdiction."

This language clearly imports that charges had been preferred before the petition for the writ was filed.

In McConologue's Case, 107 Mass. 154, Gray, J., referring to the jurisdiction of the court-martial, says:

"If, before a writ of habeas corpus is sued out, * * * he [the minor] is arrested on *charges for desertion,* he should not be released by the court while proceedings for his trial * * * are pending."

As we have seen, in Bakley's Case, supra, no charges had been filed. The question presented here is not whether the soldier, held under arrest before charges preferred, is entitled to complain, but whether the fact that he is under arrest, no charge having been preferred, prevents the civil court from awarding to the parent his right to the custody of his minor son. While the question is not free from doubt, and the decided cases are not uniform, I incline to the opinion, upon the facts found here, that the doubt should be solved in favor of the parent, who is in no default. He and his wife promptly, and repeatedly, demanded of the respondent their legal right to have their son released. This was done before the son had received allowances or any other benefit from the government on account of his enlistment. At the time he filed the petition he had no intimation that, by enlisting without his consent, the son had committed any offense, either military or civil. He has acted in good faith and with all possible promptness. That he is both a poor and illiterate man, with a large dependent family, and that, prior to his enlistment, his son lived with him, and contributed his wages in aid of the support of the family, are all unquestioned facts. They do not change the law, but appeal strongly to the court in resolving the doubt in his favor.

235 F.—17

It is manifest that respondents were confronted with new and delicate duties, and as officers desired to discharge such duties. The condition which confronted those to whom the people have intrusted the protection of rights essential to the national safety and welfare were new and urgent. The administration of legislation, making changes in the organization of the army, introducing new elements, will probably present questions difficult of solution. As with every statutory system of law, there is of necessity a degree of rigidity in its administration. The civil courts will, without unseemly or unnecessary conflict with the military tribunals, enforce the rights of the citizen when ascertained. Whether boys under the age of 21 should be permitted to enlist, without the consent of their parents or guardians, is a question for the consideration of Congress. When expressed, the civil courts must not nullify it by strained construction of the statute. The latest expression on the subject secures the right of the parent to the custody and service of the son until by his consent they are waived or surrendered to the government. This is a substantial, valuable right, expressly recognized and secured to the parent by the statute, and it is the duty of the civil court, when called upon, to protect and enforce it.

Respondents will release Richard Sandford Avery from further restraint and deliver him into the custody of petitioner. The question of cost will be disposed of in a separate order. The marshal will deliver a copy of this opinion and order to respondents at Camp Glenn, N. C.